Booth, J.,
delivered the opinion of the court:
This is a suit for the recovery of royalties alleged to be due the claimant because of the use by the defendants of a *55 certain patented invention, the patent in issue being a gas check or obturator, a device indispensable to the effective operation of breech-loading cannon. Defendant concedes the use of such a mechanism, but disclaims the use of claimant’s device by attacking the scope of the patent.
A defense going to the jurisdiction of the court is raised. We think the question is settled by the case of United States v. Berdan Fire Arms Co. (156 U. S., 552). The findings disclose an invitation to present the details of the patent to the defendant, its examination by a board of officers appointed to investigate such inventions, and its final use without the •slightest claim of ownership. Nothing appears to show an intention to dispute claimant’s title to the patent, hence an implied contract arose to pay for such use.
The material issue involved is the precise limit or scope of claimant’s patent as appears from specifications and claim 1 of his letters No. 301220.
From a careful examination of the language of the claim and specifications of the patent in suit, it is obvious that the same is susceptible of two constructions. This is likewise apparent from the history of the patent in the Patent Office, from which it appears numerous amendments were required of the claim before final allowance was granted. Claimant’s contention is predicated upon such a construction of claim 1 as limits the real patent to a “ yielding packing ring of asbestos and tallow,” defendants asserting that the language of the claim expressly describes the patent of a device composed not only of a yielding packing ring of asbestos and tallow, but also includes the employment of the other elements described in the claim, which constitute an integral part thereof and are inseparable therefrom.
The state of the art at the time of the granting of patent No. 301220 clearly indicates the novelty of the De Bange patent. Many breech-loading devices as applied to firearms had been previously patented, several of which had been more or less satisfactory, and used considerably. It is indisputable, however, that until the advent of the De Bange patent the development of the art had brought forth but two breech-loading mechanisms universally recognized and *56 employed by the nations of the world in the use of their offensive armament, viz, the Krupp or sliding-wedge system and the interrupted screw or French system. The De Bange patent was applied wholly and exclusively to the interrupted screw of French system of fermeture. The obstacle, which had in each instance forestalled the successful and effective operation of each breech-loading mechanism preceding the De Bange patent, had been the failure to discover an effective system of obturation. In the discharge of a projectile from large cannon there is instantaneously generated a large quantity of poisonous gases, which, under the tremendous pressure of 35,000 pounds to the square inch, seek instant escape toward the rear as well as the muzzle of the gun. If permitted to come in contact with the breech-loading mechanism attached to the rear of the gun, they engender a system of erosion fatal to the life of the mechanism itself. For many years the inventive genius of those skilled in the use and science of firearms concerned themselves in an effort to discover some device, some process, by which the escape of gases generated by the explosion of the projectile could be checked in their efforts to escape to the rear of the gun. To accomplish the result, some element or combination of elements must possess the inherent qualities of being capable of instantly receiving laterally the tremendous pressure of the gases, expanding with equal alertness axially, so as to close effectually the joints of the breech-loading mechanism, and then speedily resume its normal shape, so as not to retard the reloading of the cannon.
In January, 1867, Antoine Alphonse Chassepot, of Paris, France, invented and patented an obturating device, which when applied to small firearms was an eminent success, but proved a failure in its application to field guns and cannon of large caliber. The functioning element of the Chassepot obturator was a “ cylindrical disk or tube of vulcanized india rubber.” In 1868 Colonel dry attempted obturation by cups of pasteboard inserted so as to cover the head of the cartridge. His invention effected obturation, but encountered such difficulty in extracting the device from the cannon after the discharge that it was abandoned. The Elswick *57 cup and the Broadwell ring checks had been in successful use in connection with the slotted screw breech plug, but- not-as to the interrupted-screw system of fermeture. In 1872 Captain de Bange, an officer of the French army, began a series of experiments looking toward the perfection, among other things, of an obturating device. Soap, molded leather, a mixture of talc and tallow and soap with a base of lime were successively tried to supply the indispensable element of yielding packing obturator, but all to no avail. Finally, and as a result of his experiments, he combined a mixture of asbestos and tallow, formulated it under great pressure in the shape of a ring, and applied it to the interrupted screw or French system of fermeture, as set forth in his patent. It is therefore almost inconceivable how the court can, in view of the state of the art priorto the De Bange patent, arrive at any other conclusion than that the De Bange invention was, in fact and in substance, a discovery of a distinct, new, and novel system of obturation. -No system of obturation prior to it had anticipated the use of a yielding packing ring of asbestos and tallow; repeated attempts at a substitute had failed, and the findings disclose its successful use and operation ever since. Was this invention patented by letters patent No. 301220?
The language of the specification in its introductory part says: “ I have devised a system of packing placed in advance of the plug, and which is expanded by the force of the explosion of the powder to make a tight joint to prevent the ^leakage of gas;” then follows in detail the construction and operation of the device. Claim 1 is drawn with the same preciseness, and, in conjunction with the claim 3, covers in toto the details of the patent. The specifications and claim being addressed to those skilled in this particular art or science, only such precision and nicety was required as to enable such a class of persons to use the invention. (Loom Co. v. Higgins, 105 U. S., 580.) It is difficult to perceive how one skilled in the particular art or science of breech-loading ordnance could fail to instantly avail himself of the essential, the functioning, the indispensable element of the device described in the specifications and claim, to wit, “ the ring of asbestos and tallow.” Every description of the pat *58 ent in either the specifications or claim imports in terms the predomination of the one central idea of a yielding packing composed of asbestos and tallow. It is the invention; without its presence the device fails, with it the device succeeds. The details of construction are of minor importance. Shall De Bange be denied the character of inventor because, subsequent to his patent, the yielding ring of asbestos and tallow is incased in canvas instead of copper; because split steel rings instead of brass are forced by the expansive quality of the pad to perform exactly the same functions? Much expert testimony has been adduced to aid the court in the construction of this patent. It is of the usual contradictory character and wholy irreconcilable; but throughout it all it nowhere appears that any device subsequent to the De Bange patent has ever been used by the defendant that did not appropriate and embody the use of a ring of asbestos and tallow. The court is of the opinion that the invention described -by the language of the claim was the yielding pad of asbestos and tallow. The nonessential details of construction found in the specifications and claim for a patent should not be allowed to obscure the real invention, if it can be validated, without doing violence to the languge thereof. In Whipple v. Middlesex Co. (Fish Pat. case) the court said:
If by examination of the specifications, and applying to it the then state of the art, we can learn what the invention was, then the claim, which was designed to be a condensed summary of the invention, is to be construed so as to be coextensive with the invention, if that can be done without doing violence to the language.
In Consolidated Fastener Co. v. Columbia Co. (79 Fed. R., 795) the court said:
That the patent is susceptible of the latter construction must be admitted. Many plausible reasons can be advanced to sustain such a construction. On the other hand, an equally cogent argument can be advanced in favor of the former construction. Confining the discussion to the language of the patent, it is manifest that where two interpretations are possible, that one should be chosen which upholds the patent. If the defendant’s contention be upheld, the patent ceases to be protection. The essential feature is strangled by a useless and nonessential feature.
*59 A multiplicity of cases too numerous for citation, extending over tbe entire subject of construction of patents, have placed the courts in the attitude of extending to inventors the protection of the patent laws of the. country when the real invention is capable of ascertainment and it distinctly appears from the letters patent that the inventor has contributed to the art a useful and valuable invention. The rule of ut res magis raleat quam pereat is almost universally applied rather than deprive an inventor of the fruits of his industry by technical construction. (McCormick v. Talcott et al., 20 How., 402; Turrill v. Railroad Co., 1 Wall., 491; Corning v. Burden, 15 How., 268; Van Master v. Miller, 15 Blatch., 562; Winans v. Denmead, 15 How., 330.)
It is urged with much persistency that the rejection of the claim as first specified, by the Patent Office, precludes a claim for a patent covering a distinct species of packing. It is to be observed in this connection that the claimant did not introduce into his amended claim any new element or eliminate any old one.
Claim 1, the only claim in issue in this proceeding, remained substantially the same. It is not pretended that the language thereof as first specified or subsequently amended was materially changed. There was absolutely no proviso or limitation as applied to the yielding packing engrafted into this claim at any stage of the proceedings. The yielding packing was designated by the letter “ M ” in claim 1 when originally presented to the Patent Office. This description of the real invention continued to be employed throughout the entire proceedings, and finding 1 discloses that it is now the same. To hold otherwise, claim 3, a detail of construction, containing nonessential elements, must be read into claim 1. Both claim 1 and claim 3 construed together indicate an identity of invention, claim 1 being a specification of the real patent and claim 3 a specification of construction and utilization. If such narrow limitations can be imposed upon claim 1 of the De Bange patent as to restrict the patent to a yielding pad of asbestos and tallow, almost totally enveloped in the elastic shells of copper and placed between rigid shells of brass, serving as specified *60 therein, then subsequent inventors can with impunity appropriate the essential element of any device, universally recognized as elfective and useful, a distinct and important advance in the art, the indispensable and functioning feature of all its successors, it being conceded in the defendant’s brief that Captain de Bange was the first to use a ring of asbestos and tallow.
Patent No. 318098 of James B. Davis is expressly stated to be an improvement on patent No. 301220 (the De Bange patent). The improvement consisted of the introduction of steel plates, the edges of the same being brought nearly to the thinness of a knife edge. The pad of asbestos and tallow is retained, although incased in canvas. The device was not a pronounced success and its use not employed. May 21, 1895, letters patent No. 539733 were issued to Gregory Gerdom covering an improvement, as stated in the specifications, “ to the type of gas check ordinarily known, as the De Bange gas check, in which a plastic pad made mostly of asbestos is used.” The differentiating feature of the Gerdom patent was the use of a split steel ring slightly larger than the inner circumference of the cannon instead of the brass ring specified in claim 3 of the De Bange patent. The pad of asbestos and tallow was employed by Gerdom, and, with the exception of the split steel ring, substantially as specified by De Bange.
The specifications for the Gerdom patent disclose a device the operation of which depends upon the expansion of the pad of asbestos and tallow. “ When the gun is fired the gas acting on the mushroom head forces it backward, compressing the plastic pad E and causing it, by means of curve C of the spindle, to expand radially against the walls of the gun, carrying with it the highly elastic split rings forming a gas-tight joint where they bear hard against the seat.” (Finding IX.) The detail description of the De Bange patent forwarded by Lieutenant Chadwick in his letter of April 27,1883 (Finding III), specifies a canvas covering for the pad of asbestos and tallow, and likewise shows the employment of split rings. The detail of construction as found in this letter and the specifications of the Gerdom patent are *61 strikingly similar, save in the substitution of steel for brass. De Bange treated the detail of construction as nonessential. The record discloses that in all subsequent inventions the pad of asbestos and tallow is the functioning element of the device, without which its utility is as nothing. The necessary expansion, indispensable to forward the operation of both the Davis and Gerdom patents, is supplied by the De Bange pad of asbestos and tallow. The defendants used the Gerdom improvement and paid the patentee substantial royalties therefor. That it was an improvement of value is not disputed ; but it was only an improvement, and did not supplant the De Bange patent as specified and claimed for in letters 301220.
There is no testimony in the record upon which the quantum of damages can be predicated. The measure of damages would be the value of the device to the defendants. Following the precedents heretofore established, the case will stand upon the docket, with leave to furnish testimony upon this point.