Campbell, Chief Justice,
delivered the opinion of the court:
This case is one of a group of cases in which compensation is sought for the value of property and property rights expropriated by the Government. There were eight distinct cases referred to a commissioner of the court for reports of facts. One of these was the cajse of Brooks-Scanlon Corporation, after the judgment of this court had been reversed by the Supreme Court. (265 U. S. 106.) Generally speaking, the testimony taken in the several cases is made to apply to all of them. After the reference to the commissioner and after all of the testimony had been completed the Government and two plaintiffs agreed upon the settlement of two of the cases. No report upon these was made by the commissioner, nor does it appear upon what terms the settlements were made. They were cases of French nationals — corporations created and existing under- the laws of France. In the instant case one of the first questions presented for decision is whether the plaintiff can maintain its suit in this court, the statute (section 155, Judicial Code) providing that aliens who are citizens of a government which accords to citizens of the United States the right to prosecute claims *144 against .such government in its courts shall have the privilege of prosecuting claims in this court. We think it settled that citizens ,of the United States may prosecute claims against the French Republic in its courts. (See Dauphin case, 6 C. Cls. 221; Société Anonyme, etc., case, 43 C. Cls. 25.) This view renders it unnecessary to consider the effect upon the right to sue of the statute authorizing a party whose property has been taken and who is dissatisfied with the award made by the designated tribunal to accept seventy-five per cent of the award and sue in the Court of Claims for additional compensation.
The facts show that one Rasmussen, a citizen of Norway, entered into a contract with the Standard Shipbuilding Corporation for the construction of a steel cargo steamship of approximately 7,300 tons dead-weight capacity for the agreed price of $121.91 per ton payable in stipulated installments aggregating, with some agreed changes, $890,000. After having paid eight installments of the purchase price, amounting to $667,499.96, Rasmussen sold and assigned this contract to the plaintiff for the price of $1,376,050, being at the rate of $188.50 per dead-weight ton.' The plaintiff repaid the original owner the eight installments he had paid to the shipbuilder, assumed the three unpaid installments of purchase price, and paid to Rasmussen the balance of the agreed price for the contract. This was in February, 1917. The plaintiff subsequently paid the builder the two installments due upon the contract. It follows that prior to August, 1917, plaintiff had expended on account of its purchase the total pum of $1,301,883.33 and was bound to pay the last installment of the contract price upon delivery of the vessel, $74,166.66. Of these payments the sum of approximately $815,000 was paid to the builder and $486,000 to the original owner of the contract as his profit. By the terms of the contract all of the property purchased for the vessel’s construction and the vessel as it progressed in building became plaintiff’s property. The contract provided that the builder would give a bond for the faithful performance of the contract. Such a bond was given, and in order to secure the making of the bond the builder turned over to an insurance company the sum of $133,500 out of the moneys which had been paid by the plain *145 tiff or its immediate assignor. The plaintiff had therefore paid the $815,000 on the contract; it had a bond in the sum of $222,500 for the faithful performance of the contract by the builder, and the ship was on the ways with a large amount of material for it on hand when the requisition order was issued on August 3, 1917. The requisition order is set forth in the findings. It is the same as is mentioned in the Brooks-Scanlon case.
In its letter of August 28, 1917, the Fleet Corporation assured the owner of its intention to make reimbursement promptly for payments made by the owner to the builder. In the agreement of October 16 between the Fleet Corporation and the builder it agreed to. pay the latter “ an amount equal to the total amount unpaid on your contracts with the former owners,” and on December 3, 1917, in answer to the plaintiff’s inquiry whether it should make any further payment to the builder, the Fleet Corporation ordered it not to do so. In the letter of August 28 to its district agent, a copy of which, together with other papers, was transmitted to plaintiff, it was declared to be “ the expectation of the corporation to carry out the substance and purpose of the contract.” The vessel was built in accordance with the original contract plans and specifications, with some minor changes.
The facts are not materially different from those discussed in the Brooks-Scanlon case, 265 U. S. 106, so far as the effect of the requisition order and the fact of the expropriation of the contract are concerned. It is said in this case (p. 120), “ By its orders, the Fleet Corporation put itself in the shoes of claimant and took from claimant and appropriated to the use of the United States all the rights and advantages that an assignee of the contract would have had. The credit for, and advantages under the contract resulting from, payment of $419,500 made by claimant to builder were taken. The use of the plans and specifications for the construction of the ship, as well as the benefit of inspection prior to the requisition date, August 3, 1917, were also taken over. The contract was not terminated. The direct and immediate result of the requisition order and acts of the Fleet Corpora *146 tion were to take from claimant its contract and its rights thereunder.” This language is applicable to the instant case, but instead of $419,500 in the quotation there should be read in the instant case $815,833.29 paid by plaintiff for which the Fleet Corporation took credit in its settlement with the builder.
The question is, What sum will be just compensation for the expropriation of the plaintiff’s contract and its rights? It should be such a sum as will put the owner “ in as good a condition pecuniarily as it would have been in if its property had not been taken.” (Brooks-Scanlon case, p. 126.) That the contract was valuable there can be no question. The opinion in the Brooks-Scanlon case mentions and refers to elements which much be taken into consideration in determining the compensation, and, manifestly, a contract for the construction of a vessel that was well under way toward completion — that was on the ways and being built — is more valuable than a contract for a vessel whose construction was not begun when the taking occurred. Ships were urgently needed, and this fact gave added value to contracts for them. The plaintiff is entitled to just compensation as of August 3, 1911. In the award offered by the Shipping Board acting under authority of the merchant marine act of 1920 (41 Stat. 988), the plaintiff was allowed $700,610.85, of which it elected to accept 75 per cent and to sue for additional compensation. This award took no note .of the delay between August 3, 1917, and the date of the award in 1922. It apparently overlooked the fact that the Shipping Board had received from the Fleet Corporation $133,500 which the latter had in turn received from the insurance company, being the amount deposited by the builder to secure the bond to plaintiff for the faithful performance of the contract. In any event, the board awarded less than the sum which the Fleet Corporation debited to the builder in their settlement on account of payments made by the owner. The award was too small. After giving consideration to the facts of this case and to the rule prescribed in the Brooks-Scanlon case, the court’s conclusion is that just compensation to the plaintiff, as of August 3, 1917, is $957,130.00. To this should be added an additional sum, because compensation *147 was not made when it was due to be made, the rule being that where the taking precedes payment of just compensation “ the owner is entitled to such addition to the value at the time of the taking as will produce the full equivalent of such value paid contemporaneously. Interest at a proper rate is a good measure of the amount to be added.” (Brooks-Scanlon case (p. 123); Luckenbach Steamship Co., No. 33962, decided by the Supreme Court November 23, 1926, 272 U. S. 533.) This item of interest makes a noticeable difference in the amount of the judgment. After making proper deduction for the 75 per cent of its award paid by the Shipping Board October 3,1922, there is due to plaintiff principal with interest to the date of the judgment, $919,096.89, for which it is entitled to judgment. And it is so ordered.
Moss, Judge; Graham, Judge; Hay, Judge; and Booth, Judge, concur.