Nott, J.,
delivered the opinion of the court:
This is an action founded upon implied contract for filling in the old canal in the city of Washington during the year 1872, the work being done, as is alleged, under and by authority of the then existing board of public works.
The petition alleges that the claimant “ was duly authorized, and directed by the said board of public works to proceed to fill said canal” “at a stipulated price of five cents per cart-load of earth emptied in said canal.”
The claimant further avers—
“That agreeably to said orders he engaged workmen, procured horses and carts, and filled in said canal — 13,929 loads; said work was done under the supervision of General George Bal-loch, the officer in charge of the streets of the District of Columbia; that the said board of public works accepted said work, but failed and neglected to pay the claimant therefor, in whole or in part, though payment was demanded by the' claimant.”
These facts are unquestionably well pleaded, and the pleader has set forth everything necessary to constitute a good and sufficient causé of action. The only question is whether the claimant’s evidence sustains these allegations of his petition.
An implied contract does not arise from a merely voluntary service. If a man make a gift inter vivos to-day he cannot turn round and sue for its value to-morrow. So, if one perform an act beneficial both to himself and another he cannot make the other contribute his quota of the cost without showing agreement or ratification, for the law is satisfied with one consideration, and does not need to imply two. The recipient under an implied contract always has an option. In some cases he may bring his action in tort and not in assumpsit; in others he may disavow.the service or restore the goods. It is true that a wrong-doer may be held in contract though he made none; and it is true that one who receives a benefit or accepts a service may be estopped from saying that he did not agree to pay for it; but, nevertheless, it is a general principle that no man can be forced into a contract against his will.
*33 An inducement, agreement, or ratification, therefore, must be shown in the present case. The defendant needed earth to fill up the old canal, but the claimant needed a dumping-ground in which to deposit the earth he was excavating for third persons. Unless it be shown that at least an inducement was held out by the officers of the District upon the faith of which the claimant acted, there is no more reason for holding that the defendant should pay for the earth dumped in the canal than that the claimant should pay for the privilege of dumping it there. What, then, is the evidence which lays a foundation for the claimant’s alleged right of action ?
In the first place, it appears from his own testimony that he “had an order from the board of public works, through General Balloch, with the understanding I should receive at the rate of 5 cents on a load or 15 cents a yard. I should have men to dump and level, and they should keep account of the loads.” But General Balloch is not called as a witness, nor is his authority to act in the premises shown, nor his official character disclosed.
In the second place, the claimant further testifies that soon after the work was finished he presented an account therefor, which was approved by the vice-president of the board of public works, and filed with the auditor of the board. But this account and approval are not produced, nor is there more positive evidence of the filing; and the official custodians of the District archives certify that no such account appears upon the records of their office.
In the third place, there are certain letters or certificates from the vice-president of the board of public works (who was also its chief executive officer) addressed to the board of audit, which state that a promise was given and inducements held out to all persons to dump earth in the canal, with an assurance to the public generally that the earth so deposited should be paid for at the rate which the claimant seeks t'o recover in this action. But these certificates were issued after the board of public works had ceased to exist and after the writer had ceased to be an officer of the District; and it has long been held that such certificates have not the attributes of an official report and are but the communications of a private individual.
*34 It is therefore manifest that no foundation for the claimant’s case is laid. But as this court will never willingly suffer a meritorious action to fail by reason of a technical defect in evidence upon which a party in good faith relies, we proceed to inquire whether the case in all other particulars is made out.
The only evidence of the quantity of earth delivered is a somewhat loose assertion in the claimant’s testimony. Being asked in his cross-examination, “Do you know how much of the 43,000 loads was excavated under your subcontract with Filbert & Taylor1? ” he answered, “ Could not tell; about twenty-seven or between twenty-seven and twenty-eight thousand loads, or thereabout.”
But even this loose assertion is not supported by anything approaching personal knowledge, for the claimant did not himself keep an account of the loads delivered, and an account which he produces is not established by the testimony of the man who made it out; and, moreover, it appears that it was made from a book of original entries, “which is in existence still,” but which is not produced nor its absence satisfactorily accounted for. The so-called account, therefore, is not even a memorandum by which a witness might refresh his memory, and the assertion that 43,929 loads of earth were deposited in the canal, of which 16,000 came from private work, is but conjecture or hearsay.
There is still another defect in the case which, it seems to us, cannot possibly be cured. The claimant’s testimony, as before cited, states that the order of the board of public works, given to him through General Balloch, provided that he should dump earth into the canal at 5 cents a load or 15 cents a yard, and that “they should keep account of the loads.” In his cross-examination he further testifies that by the term “they” he meant the board of public works, which had “sixteen men keeping accounts.”
The claimant’s own testimony, therefore, shows that the initial agreement upon which he acted expressly stipulated that all measurements should be made by the agent of the District, and that they were so made. Such persons in effect were persons agreed upon by contracting parties to determine the quantity of the contemplated work, and their measurements were a condition precedent to a contractor’s recovering upon such a contract. The claimant has not produced these meas *35 urements. Whether he might excuse himself from so doing it is needless to inquire here, as that question has been well considered in another case, Sweeny’s Case (15 C. Cls. R., 400).
The judgment of the court is that the claimant’s petition be dismissed.
Weldon, J., had not taken his seat when this case was heard, and took no part in the decision.