htOTT, J.,
delivered the opinion of the court:
■ The history of this case, which it is needless to repeat, will be found in the second, third, fourth, fifth, and sixth findings. We-now proceed to consider the law by which it must be governed.
In Solomon’s Case (22 C. Cls., R., 335) this court said:
“ Upon the facts now found the court is of the opinion that where an officer of the Government is properly assigned to the-task of devising, preparing, or making an instrument, implement, or other subject of manufacture for the public service, and he does so, the Government bearing the expense of the experiments incidental to the invention and the cost of completing,, perfecting, and testing the device, the officer receiving his salary for his services, a presumption of implied contract does not arise, and no action to recover a royalty for the use of the invention can be maintained.”
*421 The court also said:
“ It would be contrary to public policy, and to the principle which governs the transactions of guardian and ward, or of trustee and cestui que trust, to allow an officer to take advantage of the trust confided to him. In such cases the law does not imply a contract.”
The counsel for the claimant has pointed out several differences between the facts in the present case and those in Solomon’s, on which it is forcibly insisted that a substantial distinction should be drawn. These differences have been carefully weighed by the court., and its views in regard to them will now be stated.
In Solomon’s Case it was found that the invention had been -made by an officer of the Government, and that he had used the means and appliances of the Government, and indeed of the bureau of which he was the chief, in his preliminary experiments. These means and appliances were trivial, the invention being merely a revenue stamp, and the means a little more than a small quantity of the paper of which such stamps are made, with a perforation punched by machinery, and an engraved design printed on the stamp. But, nevertheless, the ■court held, and was justified in holding, that the Government had borne the expenses of the experiments incidental to the invention.
It must be conceded that the present case differs from Solomon’s in that particular. In not one of the several inventions which form causes of action in this case does it appear that the claimant was indebted tó the Government in the slightest degree for anything pertaining to his invention until he carried his design to the commanding officer. Up to that event the Government had aided him. with neither time nor money, nor material nor assistants. Up to that moment he was truly and absolutely, legally and equitably, the master of his own device. The Government had contributed nothing and he owed the Government nothing. If he had continued to occupy that simple position not the shadow of a doubt could rest upon his absolute right to control his own invention.
But at this point a pew policy began. The loading machine. which was the first and most important of the claimant’s inventions, and which we take as illustrative of the case, was not a new chemical compound, the result of costly experiments *422 as to which the Government might have contributed the laboratory and ingredients. It was, when brought to the commanding officer, simply the committal of a thought to paper. The claimant’s counsel has dwelt earnestly upon the fact that it proved to be a perfect and completed invention, embodying no mistake, involving no alteration; and it was indeed like the loom of Bigelow, one of those wonderful instances where the mind has thought out every detail of a complicated machine and arranged its parts, while yet they did not exist, with such precision that experiment performed no office save that of verifying the accuracy of the inventor’s forecast.
Nevertheless the device belonged to a class of which nothing save failure could rationally be predicted. Its complicated parts depended so much on niceties of adjustment and absolute precision in the adaptation of means to ends that until brought to the test of actual application no one could say that the device was valuable or that it would not require years of modifying and perfecting to make its value apparent. It proved to be valuable, and it required no costly alteration to make it such, yet when the inventor carried his drawing to the commanding officer neither party knew what the result would be.
From this point onward the case was somewhat like Solomon’s ; the Government bore the expense of bringing the invention to the test of practical operation, the claimant bore nothing; the Government contributed working plans, models, patterns, material, workmen, money; the claimant superintended the work of construction, and was paid for his services. When the supreme moment of practical success was reached the employe had not applied for a patent nor expended a dollar in the attainment of this end ,• the employer had borne the entire cost of the development, or demonstration, or experiment, or whatever it may be termed, had paid the em ploye for his services upon the machine, and with his assent had made the invention valuable and put it at its intended work in the shops of the arsenal.
The question here is not whether these facts would constitute a defense to an action for infringement in the ease of a machine constructed subsequently to the patent, but whether upon these facts the law will imply a contract, and if so, what contract.
Certainly as to the eight loading machines constructed prior to the application for a patent no contract can be implied. The *423 counsel tor the claimant has argued with great force that the drawing exhibited to the commanding officer was a completed and perfected invention, and that the action of the commanding-officer in examining, approving, and using the proffered device constituted an implied contract. It is true that in one sense ¡m invention maybe said to exist when the idea flashes through the inventor’s mind. Philosophically it may be said to be complete when it is materialized into a model, or drawing, or other form intelligible to other minds. But such an invention is from a legal point of view an abstraction, which does not draw to itself the attribute of property until a patent, be granted, or at least an application for a patent be filed. Until then the abstraction is not property, and any one who may possess it may use it, and as to the specific thing so used the law will not consider him a wrong-doer or hold him liable though* he continue the user after a patent be granted. (Rev. Stat., § 4899.)
In other words, when the claimant brought his drawing to the responsible chief of the arsenal, and when the Government constructed the eight loading machines which were constructed prior to the patent, all that the claimant possessed was an idea to which he might some day attach the element of property. But he did not possess property 5 and until property exists it can not be “ taken ” in the sense of the Constitution, nor be the subject of implied contract as between individuals.
The question then recurs as to the ninth loading machine manufactured and put in operation subsequently to the claimant’s application for a patent.
In Solomon’s Case, as in this, that question came before the court blended with the fact that the claimant there, like the claimant here, had been, at the time of the adoption of the device, an employé or agent of the Government, and the device was to be used in connection with his work, or in work with which his employment was connected. In Solomon’s Case the question was much plainer and the defense much stronger than they are in this. Here the inventor was not the chief of the bureau in which the device was to be used ; he had not been assigned to the duty of selecting a device; he did riot withhold from the other officials, responsible for the selection, the fact that he was the inventor, and that the adoption of his device might involve the Government in legal liability. On the contrary, the claimant was a simple mechanic, on daily wages, hold *424 ing a subordinate position, charged with no responsibility save that of performing honestly his daily task, and his conduct was fair, honest, and irreproachable.
Therefore the relation of guardian and ward, or of trustee and cestui que trust, as between himself and the Government can hardly be said to exist. The question is narrowed down to this; whether an uupatented, undeveloped device, produced by an employéof the Government, proffered to the Government without reservation or condition, developed and brought to the rest of practical use at the cost of the Government and with the consent of the inventor, will become the subject of an implied contract if the Government should extend its user of the invention by the construction of a new machine subsequent to an application for a patent. The question is a narrow one, and if there be a! case wherein a court might well incline to abroad and libei’al view of it it is the case of the present claimant.
The mind-work of the inventor is property within the intent of the Constitution, but it is property of the most elusive and intangible kind. It is something, but it is something which becomes property only by operation and through the intervention of law. RTovelty is an ever-present essential in it, and its value is always speculative, conjectural, a thing of the future and of the unknown, which may bring to the owner a vast fortune, or loss and disappointment.
When the agent of the Government takes a horse or an ox for public use he knows what he is taking; he knows too that it is property, and that it has a value in the actual experience of the men about him, though he and the owner may not be able to agree on the price. He knows, moreover, that by the taking the Government is acquiring something and that the owner is losing something, and that the extent and value of this something are both susceptible of ascertainment. Concerning such a taking there can be no doubt that the one party will incur a liability and the other acquire a right of action. But when the inventor comes to the public agent, as in this case, or as in Solomon’s, bringing only an idea, proffering only a suggestion, the agent is not taking property, and none exists for him to take. What he is doing is committing the Government to a new system, and entangling it in present expenses and future liabilities.
If the employé were to come with a patent in his hand, avow *425 ing his device to be property, seeking to dispose of it as such, and a responsible agent of the Government were to accept it, or adopt it and put it into the Government service, and the Government should derive a benefit therefrom, it might well be held that the mere employment of the inventor in the Government service should not nullify the implied sale. But the case before us does not contain these elements of property and bargain and sale; and while we believe that the inventor acted honestly and in good faith, it is nevertheless manifest that he took advantage of his employment to bring his device into the public service.
The court is of the opinion that public policy forbids that such transactions be allowed to ripen into public liabilities, and it is accordingly constrained to this conclusion, that where an employé of the Government takes advantage' of his connection with the Government to introduce his unpatented device into the public service, he giving no intimation at the time that he regards it as property or that he intends to protect it by letters patent, but allowing the Government to test the invention, at its own exclusive cost and risk, by constructing machines and bringing it into practical use before he applies for a patent, the law will not imply a contract; neither will a contract be implied in favor of the employé who has thus placed a patentable device in the public service as to machines constructed and used after his patent has been obtained.
If the court be in error in this conclusion, there still remains an important question in the case which goes directly to the right of recovery.
Patent rights now form the subject of action in two distinct classes of cases, that is to say, cases where the action is upon the patent and may involve a question of validity, infringement, or right, and cases where the action is to recover an agreed compensation for the use of the patent property in the form of a royalty or license fee. The former are for the infringement of a-right and are in their nature torts; the latter are ex con-tractu.
These two classes of cases are so distinct, that since the decision in Hartell v. Tilghman (99 U. S. R., 557), it has been regarded as settled that the State courts have jurisdiction of the latter, though not of the former, and, conversely, that the United States courts, while they have jurisdiction of the former, *426 do not have jurisdiction, as subjects of patent law, of the latter. Albright v. Teas (106 U. S. R., 613); Dale Tile Co., v. Hyatt (125 id., 46.) In this court patent jurisdiction is essentially that of the State courts (amplified by jurisdiction of cases of implied contract), though in substantially every case lhathas been before ns the action has been more or less confused with actions for infringement, both as to the extent of the liability and the measure of damages.
During the last quarter of a century there have been but two cases, of those which have been carried up to the Supreme Court, where a patentee has actually recovered a judgment upon an implied contract, and in both of those the highest executive authority invited inventors to exhibit their designs as a subject of purchase and sale, and the inventors exhibited them as property, and the Government accepted and adopted and used them a,s such. (McKeever’s Case, 14 C. Cls. R., 396; affirmed without opinion October term, 1882; Palmer’s Case, 20 id., 432; affirmed 128 U. S. R., 269.)
For the purposes of this inquiry it may be conceded that if the construction of the uinth loading machine had been by an ordinary person an action for an infringement could be brought against him. But in these cases against the Government the element of contract comes in and the element of tort must be excluded. It is as if the parties had expressly agreed that the taking of the property should not be deemed tortious, and that where the validity of the patent is attacked, the defence should come in as if the suit were on an express contract with a warranty, and the defendant were setting up a failure of consideration. Accordingly, if the facts are such that a contract may be implied in these cases, the law will imply one; but the law will not treat the user as if it were an infringement.
The implication must be drawn from all the facts of the case, and the contract implied must give effect as nearly as may be to the supposed intent of the parties. It is not the case of the owner of personal property who waives a tort and sues in contract; it is the case of an owner who offers his goods to a purchaser upon undefined terms, and who consequently can not maintain an action of trover or replevin. The contract to be implied is one which ought to be inferred from all the facts of the case, recognizing a mutual intent, in both parties and giving due regard to the rights of each.
*427 Now, in this case before us, the defendants, not wrongfully, but at the invitation of the claimant, with his consent and by his solicitation, took his unpatented, untried, unknown device, and by bringing it tcwa successful practical result imparted to it. a value it had never had before. The defendants did this at their own cost, and assumed exclusively the risk that their outlay might be thrown away and the experiment end in failure.
The claimant gave nothing, contributed nothing, assumed nothing. And, according to his theory of the transaction, he was to give nothing, was to contribute nothing, was to assume nothing. The agreement which he would have the law make for both parties was to be entirely unilateral; the defendants were to expend money in building a machine which should test the invention; the claimant was to continue free to bring* that state of affairs to an end at any moment by the simple expedient of filing his application for a patent, when he would be able to stop the completion of the machine they were building, and impose his own terms for the use of his invention.
It seems manifest to the court that this would be a contract which the law ought not to imply, and that it would be the result of confusing the law of contract with the law of tort. The court cannot look to the law of contract when dealing with the question of jurisdiction, and to the law of tort when dealing with the measure of damages. If the transaction was one of contract ah initio, what was it that the inventor undertook to sell and the manufacturer to buy'? If it was simply the thing as it stood, an unpatented, an untried invention, without reference to a patent being taken out by either party, the mere disclosure of a secret, the damage must needs be simply for the disclosure of the secret, and in such a case as this exceedingly small. ,
The measure of damages in a case of implied contract is the market value of the thing at the time, not the value which subsequent transactions may attach or subsequent events disclose. If the subject of bargain and sale was the -invention considered as a patentable device, what reason is there for supposing that it was within the mutual intent of the parties that the seller should be at liberty to take out a patent and exclude the buyer from the use of the invention, any more than that the buyer should take out the patent and exclude the seller from all rights in the device ?
*428 To the court it seems more reasonable to hold that if a contract is to be implied it should be implied from the whole transaction, and that the whole transaction leads to the conclusion that it was the intent of the parties that the defendants should bear the cost and risk incident to making the device valuable by bringing' it to the test of practical success in their own business, and that the inventor should allow an unrestricted right to use it, not perhaps generally, but certainly in the business in which he voluntarily placed it.
The judgment of the court is that the petition be dismissed.