Nott, Ch. J.,
delivered the opinion of the court:
This case resembles QilVs (25 C. Cls. R., 415) in that “ the claimant was a simple mechanic, on daily wages, holding a subordinate position, charged with no responsibilhy save that of performing honestly his daily task, and his conduct was fair, honest, and. irreproachable.” It also resembles the Gill case in that he was the inventor of an exceedingly valuable device, which the' Government has used many years in its business of engraving and printing; that it was not a part of his duty to make inventions; that his device was made and invented and perfected within his own time and exclusively at his own cost; and that while it has been of very great value to the Government he has never received for its use so much as one dollar.
At this point resemblances cease and differences begin: In Gill’s case the claimant went to the officers of the Government with his invention and proffered it. In* this case the officers of the Government came to the claimant; the superin *113 tendent of the Bureau of Engraving and Printing carried him, manifestly reluctant to go, before the Secretary of the Treasury, and the Secretary of the Treasury and the superintendent took the invention and attached it to the presses in the defendants’ shops without a word of solicitation upon his part. In Gill’s case the officers of the Government did not know that the claimant intended to patent his device, and eight of the nine machines used in the arsenal were in operation before he so much as applied for a patent. In this case the claimant demurred to the use of his device by the Government, and told the superintendent that he wished to patent it first; and the superintendent volunteered to supply him with a patent lawyer; and the patent lawyer which he so supplied assured the claimant that the use of the invention by the' Government would not interfere with his rights as a patentee; and the superintendent knew that the invention would be patented and was being patented as fully and completely as the claimant himself.
In the Gill case it was said that the device when brought to the attention of the officers was simply “the committal of a thought to paper,” and that its complicated parts were such that no one could say the device was valuable or that it would not require years of modifying and perfecting to make its value apparent, and that the Government bore the expense of bringing the invention to the test of practical operation. In this case the device was exceedingly simple; it was perfectly evident that it would be operative; the cost to the Government of making a register was too trivial, both in time and money, to form1 a consideration, and was done voluntarily by the superintendent and not at the solicitation of the claimant.
But at this point unhappily the resemblances between the two cases begin again. The claimant did not speak out and say either to the Secretary or to the superintendent, “If the Government used my device I must be paid a royalty.” It is painfully apparent that the poor mechanic, in the presence of such powerful employers, feared to speak. He rested not on what was said by the Secretary or the superintendent or himself, but on a vague hope that if his register worked well the Secretaiy of the Treasury would allow him something. The *114 work of introducing bis device into the press room went on for seventy-three months and until the Bureau had attached and used registers of his device amounting- to an aggregate of 14,382. Then the claimant spoke.
In its business of engraving bank bills and bonds the Government is a manufacturer and entitled to no more consideration than any other engraver and printer. But it is entitled to no less. If this were an action between the claimant and an individual manufacturer two questions would arise: First. Was there a contract, express or implied, between the parties? Second. Did the employee so mislead the employer that as against his legal claim an equitable estoppel should preclude him from asserting his legal rights ?
Of what are called, generally, “implied contracts” there are two kinds. The first is where a man has tortiously taken property and the owner waives the tort and sues in assumpsit. In such cases there is no meeting of .the minds. It would be absurd to hold by legal fiction that their minds met when the defendant unlawfulty and against the owner’s will took his property or when, without the owner’s knowledge, he sold it. Such cases rest upon the principle that if the owner chooses to waive a tort and sue for the money derived from his property which is in the defendant’s bands the defendant can not set up his own unlawful conduct as a defense. The second kind of implied contracts is where the parties met and their meeting resulted in a wordless agreement.
In the leading case of McKeever (14 C. Cls. R.., 396) the War Department appointed a board of officers to consider the militaiy devices which inventors were presenting for sale. The board recommended the claimant’s device as one which should be adopted and used in the Army. The War Department approved the recommendation, and the Ordnance Bureau proceeded to manufacture. Here was an agreement in everything but words — an agreement on one side that the Government might use the invention, and on the other that it would pay for it what it might be reasonably worth.
If, in the case now before us, the inventor had said to the Secretary of the Treasury, “You may use my device, paying, me a reasonable royalty,” and the Secretary had said nothing, *115 but had ordered the device adopted, a jury would be authorized to imply from the circumstances the words of acquiescence and agreement which the Secretary did not speak, and a contract would be implied. But, as before stated, the claimant did not speak, and the Secretary and superintendent remained under the illusion that the claimant did not intend to charge-the Government anything for the use of the invention in a bureau in which he was an employee. Clearly here was a case where there might have been a meeting of minds, and should have been a meeting of minds, but where there was none. The claimant said nothing about royalty; he heard the order given for the manufacture of registers after his design, and still he said not a word concerning remuneration.
It is a well-settled rule of law that a man can not have a contract thrust upon him against his will. As was said in the case of Boston v. District of Columbia, (19 C. Cls. R., 31):
“An implied contract does not arise from a merely voluntary service. If a man makes a gift inter vimos to-day he can not turn round and sue for its value to-morrow. So, if one performs an act beneficial both to himself and another, he can not make the other contribute his quota of the cost without showing agreement or ratification. It is true that a wrongdoer may be held in contract though he made none; and it is true that one who receives a benefit or accepts a service may be estopped from sajnng that he did not agree to pay for it; but, nevertheless, it is a general principle that no man can be forced into a contract against his will. ”
The closest analogy to the present case is that of gifts im.ter vimos. A man can not make presents to another year after year and then sue him for their value on an implied contract. It is true that the recipient gave no consideration; it may be true that no express words were spoken which indicated that the gifts were gifts; but if the giver allowed the other to believe that they were gifts and he accepted them in that belief, and there was no meeting of minds between them, expressed or unexpressed, looking toward a contract, the law will not allow a contract for their value to be implied.
In this case the transactions were between employer and employee, which comes near to being inter vivos, and the employer accepted and continued to accept in the belief that *116 the implied license to use was to be without consideration— was to be a gift growing out of the peculiar relations of the parties — and this went on year after year. The defendants bad no legal right to use the invention, but they had the right to print and engrave without using it. That is to say, if they had known that a royalty would be exacted they had the right to save themselves that expense and to use registers of' another device.
The judgment of the court is that the petition be dismissed.
Howry, J., did not sit in this case and took no part in the decision.