Peelle, Ch. J.,
delivered the opinion of the court:
This action is to recover royalties for the alleged use by the Navy Department of patents issued to the claimant, trustee, on applications theretofore made by his assignors, Frederick J. Sawyer and John J. Knapp and George W. Dunn, for blowing out of the bore of guns inflammable and deleterious gases remaining in the gun after firing.
The substantial and controlling facts found are these: Prior to the applications for the patents for the use of which royalties are claimed there had been serious accidents from the explosion of gases remaining in the guns after firing. A suggestion was made in the communication set forth in Finding III to the Bureau of Ordnance, having to do therewith, of a device to extract gases from the bore of guns passing out through the muzzle, thereby preventing them from escaping into the turret while the breechblock was being opened. The communication was referred by the bureau April 11, 1904, to the Washington Navy Yard, where Lieut. Commander Knapp was on duty, requesting an investigation of the method suggested, which was done under the direction of Foreman Lynch, under whom Master Mechanic Dunn, a civilian employee, was then serving.
Two days later news of the accident on the Missouri reached the Bureau of Ordnance, and on April 13, 1904, the chief of the bureau had a conference on the subject with Lieut. Commander Chase, assistant to the bureau, who suggested a plan for preventing such occurrences. The afternoon of that day Chase, together with Latimer, designed a' *633 means of expelling gases from the bore of guns by the use of a cleaning medium — air, or air and water, or steam — to be led into the screw box through radial holes drilled into the blank spaces thereof so that the cleaning medium would enter the bore as soon as the gas check was unseated in the process of opening the breech for a reloading, substantially the same as disclosed in the patents in this suit. r
The means so designed by Chase and Latimer were communicated to Lieut. Commander Knapp and Master Mechanic Dunn at the navy yard on the morning of April 14, 1904. The plan so suggested by Chase was installed and tried on an 8-inch gun from the Iowa, then at the yard, and operated successfully as early as May 13, 1904, 12 days before Sawyer filed his application for patent May 26,1904.
Latimer by direction of Chase indicated to Knapp how the radial holes could be drilled through the breech of the guns and into the blank spaces of the screw box, and suggested to Knapp that the plan be tried by application to a dummy breech mechanism which was then in the gun shop. Master Mechanic Dunn was present during part of the conversation between Knapp and Latimer, but neither Knapp nor Dunn made any claim that they or either of them had made a gas-expelling device of a like or similar nature to the one designed and suggested by Chase and Latimer.
F olio wing these conversations and suggestions, seven days thereafter Knapp, in the line of his duty and over his official signature, submitted to the superintendent of the navy yard a memorandum and sketch of a description for extinguishing burning matter in the bore of a gun and also preventing blowbacks, and requested that an 8-inch gun from the Iowa be utilized to test and develop the device; and the use of an 8-inch gun from the Iowa theretofore authorized for the like or same purpose was continued.
While the work was going on Chase and Latimer visited the yard and, in the presence of Knapp and Dunn, directed modifications and changes in the device, no claim then being made by Knapp or Dunn that they, or either of them, had originated a like or similar design; nor did the chief of the bureau, Chase, or Latimer have any knowledge that Knapp and Dunn claimed to have originated the device until their *634 patent attorney, Mr. Church, visited the bureau on or about July 16, 1904, and asked the bureau to request the Patent Office to expedite the examination of the application for patent then pending, which the bureau declined to do on the ground that it considered that subordinates under its direction had designed the device in question.
Following the visit of Mr. Church to the bureau as attorney for Knapp and Dunn, Chase and Latimer visited the navy yard, and Latimer there insisted that he had disclosed to Knapp and Dunn the plan of constructing the gas ejector on April 14, 1904, and they were informed that the device had been previously designed by Chase and Latimer in the bureau.
Coming now to the patent claimed by Lieut. Sawyer, who made application therefor May 26, 1904 — no caveat having been previously filed — it appears that prior thereto (Apr. 24, 1904) Lieut. Commander Bristol submitted to Chase, assistant to the bureau, a scheme for an air jet substantially like that theretofore suggested by Chase and Latimer. Soon thereafter Lieut. Sawyer, then attached to the Nevadavis-ited the Brooklyn, on which Lieufij Bristol was. serving,, and Bristol explained and illustrated to him the design which he had conceived and disclosed in a letter to Chase. Thereafter, on May T, Lieut. Sawyer visited Washington to consult Ernest Wilkinson, Esq., a patent attorney, about filing an application for a patent for “improvements in means for sponging out guns.” Sawyer’s application, as before stated, was filed May 26,1904, but prior thereto, May 18, the gas expelling device installed on the 8-inch gun from the Iowa under the direction of the Bureau of Ordnance was practically completed and was in successful operation. The application of Knapp and Dunn was filed June 10, 1904, for the invention which they claim to have made April 14, but the invention of substantially the same character of device was made by Chase and Latimer on the afternoon of April 13, and was disclosed to Knapp and Dunn by Latimer, as before stated, on the morning of April 14.
Pending the applications of Sawyer and Knapp and Dunn, Knapp became suspicious that Sawyer had anticipated the *635 device which he claimed he and Dunn had conceived, and apparently to avoid interference in the Patent Office they entered into the agreement -set forth in Finding YII by Paragraph IX of which it was agreed that the question of priority of invention between them should be submitted to their respective patent attorneys, Wilkinson and Church, and by them, if they failed to agree, to an arbitrator, whose decision should be final; but the question was not determined,, and apparently in lieu thereof a short time before the issuance of the patent the Knapp and Dunn application was canceled, and by amendment was incorporated into the Sawyer application, thus endeavoring to avoid any probable interference between the applications in the Patent Office and at the same time giving to the Sawyer patent the broader claims of the Knapp and Dunn application.
On August 15,1904, the claimant, trustee, by his attorneys, while the applications for patents were pending, presented for the first time by letter his claim against the Government for compensation for the use of the device claimed to be covered by the patents in suit, conceding therein that the same had been tested by the United States. The correspondence in relation thereto is set forth in Finding IX.
In response to the communication the Secretary of the Navy informed the claimant, through his attorneys, that the invention for which compensation was claimed had been inspired and developed under the direction of the Bureau of Ordnance by its own subordinates, among whom were Lieut. Commander Knapp and Mr. Dunn, and that, therefore, the department would authorize the bureau to use the device, leaving the question of compensation, if letters patent should be issued, to the determination of the courts, to which the claimant, through his attorneys, replied that he was content that the Navy Department should proceed with the manufacture and use of the device, leaving the courts, if letters patent should be granted, to determine the compensation to be paid.
The claimant’s contentions are (1) that the title to the patent is in the claimant; (2) that there was a contract to pay royalties if the Government used the device, and that, *636 therefore, the court has jurisdiction; (3) that the Government had used the device as covered by the patents and is, therefore, liable for royalties.
The defendants’ contentions are (1) that the claimant acquired title, if at all, by assignments, and that, therefore, under Revised Statutes, sections 3477 and 3737, inhibiting assignments of claims and contracts, he can not maintain this action; (2) that the facts respecting the relation of the parties shown by the correspondence set forth in Finding IX are not sufficient upon which to base an implied contract; (3) that prior to the date of Sawyer’s application, May 26, 1904, substantially the same means for expelling gases from the bore of guns had been conceived and invented by others and reduced to successful practice 12 days prior to the date of Sawyer’s application; (4) that Chase, Latimer, Knapp, and Dunn were subordinates of the Bureau of Ordnance, and that before the device was invented by Knapp and Dunn, as they claim, it was installed at the Washington Navy Yard, under the direction of the bureau, by Government officials in the line of their duty, and that, therefore, the Government has a shop right or license to use the same; and (5) that the Sawyer patent is anticipated by the prior art and therefore, lacking in invention, and is void.
Assuming, as we think we may, that under the assignments made while the applications for patents were pending, as set forth in Finding VII, and before the claim herein arose, the claimant, as trustee, may maintain this action [Berdan Fire Arms Co., 25 C. Cls., 355; Federal Manufacturing Co., 42 C. Cls. 479, 511; Campbell v. James, 18 Blatchford, 92; and Revised Statutes, sec. 4898), we will inquire (1) has the court jurisdiction to entertain the action, i. e., can a contract be implied from the- facts established to maké compensation for the use of the patents; (2) who invented the device for which royalty is claimed; (3) has the Government a shop right or license to use the patent.
The questions in relation to the origin of the invention and its use are so interwoven with the contentions of’the parties in the correspondence relied upon by the claimant to establish an implied contract that we will consider them substantially in the order in which they arose.
*637 Broadly speaking, it was not only .within the province of the Chief of the Burean of Ordnance but it was clearly within the line of his duty to devise or cause to be devised such means, methods, or devices as in his judgment were essential and necessary not only to make the guns of the Navy efficient, but to see that they were used in a way to protect life and property. With this keen insight, and endeavoring to profit from the accidents which had theretofore occurred after the firing of guns, the Chief of Ordnance, before the filing of either of the applications for the patents .in suit, directed the officers in the Washington Navy Yard to investigate the method suggested to it for drawing smoke from the chamber and bore of guns, and to experiment with the device fitted for the use of both air and water ejector. The bureau’s direction, as set forth in Finding III, was copied and distributed before the experimental work was commenced, and was presumably known to all the officers on duty in the navy yard having' to do therewith, including Lieut. Commander Knapp and Master Mechanic Dunn, as the former was then on duty in the yard as inspector of ordnance, guns, and mounts, while Dunn was under Foreman Lynch, who directed the work in question to be done.
The question of novelty or invention, the courts have held, is a question of fact to be determined upon the evidence adduced. (Reckendorfer v. Faber, 92 U. S., 347, 352; American Sales Book Co. et al. v. Bullivant, 117 Fed. Rep., 255, 258.)
“ The first to reduce an invention to practice, as shown by an actual construction produced in court, is usually held to be the inventor as against another who merely says he had' previously conceived the invention.” (Merrimac Mattress Co. v. Feldman, 133 Fed. Rep., 64; Laas et al. v. Scott et al., 161 Fed. Rep., 122, 126; Warren Bros. Co. v. City of Owosso, 166 Fed. Rep., 309, 315.)
In the .case of Agawam Co. v. Jordan (7 Wall., 583, 602) it was said: “The settled rule of law is that whoever first perfects a machine is entitled to the patent and is the real inventor, although others may have previously had the idea and made some experiments toward putting it in practice. He is the inventor and entitled to the patent who first *638 brought the machine to perfection and made it capable of useful operation.” To the same effect also are the cases of Laos et al. v. Scott et al. (161 Fed. Rep., 122, 126) and Warren Bros. Co. v. City of Owosso (166 Fed. Rep., 309, 315.)
“ It is not necessary in order to establish reduction to practice that the test [of the device relied upon] should be one of complete accuracy. It is seldom that an inventor reaches perfection in the first device constructed. The test should be to ascertain whether the device reasonably meets the requirements of the specifications, and, if it does not measure up to this test, can it be made to meet it by the introduction of mere mechanical changes? If it can, it should be regarded as a reduction to practice.” (Poole v. Dunn, 151 O. G., 450.)
In the case of Buser et al. v. Novelty Tufting Machine Co. (151 Fed. Rep., 478, 492) the court, referring to what constitutes an experiment or a completed invention capable of producing the result sought to be accomplished, said: “ If, however, the machine or other thing is complete, and capable of producing the result sought to be accomplished, it has passed the experimental stage and becomes an invention; and, in order that it may constitute an anticipation, it is immaterial how well it becomes known or how much it is used.” Further in the case cited it was said: “ The prior knowledge and use by a single person is sufficient. The number is immaterial.” (See also Walker on Patents, §71, and cases therein referred to.)
In the case of Agawam Co. v. Jordan {supra, p. 603) it was further held, in substance, that persons employed were entitled to their own independent invention, “ but where the employer has conceived the plan of an invention and is engaged in experiments to perfect it no suggestions from an employee not amounting to a method or arrangement, which in itself is a complete invention, is sufficient to deprive the employer of the exclusive property in the perfected improvement.” (See authorities cited therein and also cases of Collar Co. v. Van Dusen, 23 Wall., 530, 563; Atlantic Works v. Brady, 107 U. S., 192; Fuller & Johnson Mfg. Co. v. Bartlett, 68 Wis., 73, 85.) •
*639 In the case of Solomons v. United States (22 C. Cls., 385, 342) the court said: “ Upon the facts now found the court is of the opinion that where an officer of the Government is properly assigned to the task of devising, preparing, or making an instrument, implement, or other subject of manufacture for the public service, and he does so, the Government bearing the expense of the experiments incidental to the invention, and the cost of completing, perfecting, and testing the device, the officer receiving his salary for his services, a presumption of implied contract does not arise, and no action to recover a royalty for the use of the invention can be maintained.” The authorities cited seem to cover the present case respecting the Knapp and Dunn patent.
Sawyer filed his application May 26, 1904, and that is the date of his invention, according to the ruling in McCormack v. Cleal (12 App. D. C., 335), hereinafter referred to, while Knapp and Dunn did not file their application until June 10, 1904,- both applicants seeking by similar, if not by like plans, to accomplish the same results.
Doubtless, to avoid the effect of a decision in the Patent Office on the question of interference, the claimants entered into the agreement set forth in Finding VII, whereby the question of the priority of the invention, it was agreed, “ shall be submitted ” (par. 9) to their respective patent attorneys who, on their failure to agree, it was provided “ shall be referred to an arbitrator ” whose decision “ shall be final.” But, for obvious reasons, no such decision appears to have been rendered. The Patent Office appears to have treated the agreement as relieving it from raising the question, though clearly it had the right, if it was not its duty, under Revised Statutes, section 4904, to do so. (See Sherwood v. Drewson, 124 O. G., 1205.)
In the case of Morgan v. Daniels (153 U. S., 120) it was in substance held that where the priority of an invention was in question before the Patent Office and a decision was rendered in respect thereto the same was controlling upon a question of fact in suits between the same parties unless the contrary should be established by testimony which in character and amount carried thorough conviction.
*640 The omission or neglect of the Patent Office to raise and decide the question, however, does not preclude the court from inquiring into the matter. (Walker on Patents, sec. 142, and cases therein referred to.) It seems clear that had the Patent Office gone into the question, under the section of the Kevised Statutes cited, as well as under its own rules and decisions, the decision would have been in favor of Knapp and Dunn. That is, that the patent of Sawyer was anticipated by that of Knapp and Dunn, who had tested and developed the same at the expense of the Government, under the direction of the Bureau of Ordnance. If we are right in this, then the patent of Sawyer, under the authorities we have cited, is deprived of its novelty.
And if we were to assume that Knapp and Dunn were the originators'of the device, they permitted it to be developed, tested, and used at the expense of the Government without any notice to it that they claimed any property therein until after they had applied for a patent. On this theory the case is ruled by that of Gill (25 C. Cls., 415, 423), where, in substance, it was held that if ah inventor took advantage of his connection with the Government to introduce his unpatented device into the public service, without intimation that he claimed property therein or that he intended to protect the same by letters patent, and allowed the Government, as in effect conceded by the claimant in his letter demanding compensation, to apply and test the same at its own cost and risk by bringing it into practical use before he applied for a patent, no contract could be implied to pay therefor; and that such rule would extend to a machine constructed after a patent had issued, if used in the place and business In which the inventor voluntarily placed his device. On appeal the case was affirmed (160 U. S., 426), and in addition it was there ruled that “ a person looking on and assenting to that which he has power to prevent is precluded from afterwards maintaining an action for damage.” (See Solomons v. United, States, 137 U. S., 342, also affirmed, and other cases therein cited to the same purport. See also the case of McClurg et al. v. King stand et al., 1 How., 202.) In the latter case it was held that the facts (substantially as in the *641 Gill and the present case) justified the presumption of a license to use the invention. To the same effect also is the cases of Wade v. Metcalf (129 U. S., 202), McAleer v. United States (150 U. S., 424, 431).
By reason of the acts of the Bureau of Ordnance, coupled with the development and use of the device by and with the consent of Knapp and Dunn, without any intimation that they claimed or intended to claim any property therein until after they had applied for a patent, the correspondence looking to compensation for the use of the device, after the issuance of letters patent, can not be held to create an implied contract. To so hold would be permitting Knapp and Dunn to take advantage of their acquiescence and silence in the development and use of the device at the expense of the Government at a time when they should have spoken. (Fuller, &c., v. Bartlett, 68 Wis., 73; Lane & Bodley Co. v. Loche, 150 U. S., 193, 201.)
In the first of the cases cited (68 Wis.) the superintendent of a manufacturing company, knowing that it was the intention of the company to put upon the market a new machine, voluntarily disclosed his conception of a device to be used in connection therewith; and under the directions of the company and with its material and at its expense he voluntarily perfected such device and constructed machines and aided in putting them on the market. On the facts stated the court, as stated in the syllabus, “ Held, that from the facts the law would not imply an agreement for the absolute assignment to the company of the patent for such device, but would imply an agreement for a license to the company to manufacture perpetually, at its then existing, works, machines embodying such invention, and to sell them wherever it could find a market.”
In the case of Russell, etc., v. United States (35 C. Cls., 154), where the Government had entered into an agreement with the Krag-Jorgensen Company to manufacture arms, said company giving bond to indemnify the United States “ for all liability on account of patent rights granted by the United States which might affect that right to manufacture granted by said contract,” the claimants sought to induce the *642 Government to adopt their patent, conceding an infringement, on the theory that the bond so executed was for the benefit of the patentees. In response to that contention the department, among other things, said: “ That company agrees to indemnify the United States on account of any patent right granted by the United States which may affect the manufacture of the guns, in which case your course would be to communicate directly with the company. On the other hand, should the Government proceed to manufacture the arms without such arrangement, your course will be to bring a suit against the Government in the Court of Claims after manufacture has progressed.” The court held that no implied contract arose and on appeal the case was affirmed. (182 U. S., 531.)
The Harley case (39 C. Cls., 105, 114, affirmed 198 U. S., 229) is later, and is even a stronger case than that of Russell.
There is no language in the correspondence or in the acts of the officers of the Government from which the court can conclude that there was mutual intent to contract. The claimant in his communication to the Secretary of the Navy, after stating that the inventions applied for did not relate to a matter with which either of the claimants’ assignees was directed to experiment as part of his official duty and that the devices had been tested with satisfactory results by the Government, advised the department that further application or use of said inventions was not authorized by the applicants for patents save upon the expectation of a reasonable compensation, to which the Secretary of the Navy replied, in substance, that while the Bureau of Ordnance would be authorized to proceed to manufacture and use the device mentioned, leaving the question of compensation to the courts, the same had been inspired and developed under the direction of the Bureau of Ordnance by its own subordinates in the line of their duty, and that Lieut. Commander Knapp and Mr. Dunn were among the subordinates referred to in the statement or indorsement of the bureau, referring the claimant’s communication to the Secretary.
Here was a denial of the claimant’s right to compensation and the assertion of a superior right on the part of the *643 Government to tbe use of tbe device on tbe ground tbat tbe invention for wbicb he claimed compensation bad been inspired by subordinates in tbe bureau, and that therefore the manufacture would be authorized and tbe question of compensation, if any, in case letters patent should be issued, would be for the courts to determine. Certainly it can not be said from the correspondence that there was any mutual intention or understanding that the Government should compensate the claimant for the use of said invention.
Implied contracts in fact do not arise from the denials and contentions of .parties but- from their common understanding in the ordinary course of business, whereby mutual intent to contract without formal words therefor is shown. (Hert-zog v. Hertzog, 29 Pa. St., 465, and authorities there cited; Harley v. United States, supra.)
As between the claimant and the Government, the latter is the owner for the purpose of its own use the same as though the device had never been patented. True, the suggestions to Knapp and Dunn, except as to the letter of the chief of the bureau set out in Finding III, were made orally, but this can not be held to aid the claimants since the device so suggested was developed and perfected by them, under the direction of the bureau acting in the line of duty, and any other construction would be far-fetched.
The device itself so patented being the device of the bureau, thereby relieves the case from the rule laid down in the cases cited by the claimant to the effect that suggestions made to a patentee by others to defeat his right to a patent must be such as to furnish all necessary information upon which to enable one to construct the improvement. That is to say, the suggestions must be so full and complete as to leave nothing to devise or work out by his own skill or ingenuity. (Pitts v. Hall, 2 Blatch., 229.) However, the suggestions to Knapp and Dunn by the officers of the Bureau of Ordnance had reference only to the device originating in the bureau, which was substantially the device perfected under its direction, and not to any device claimed to have been conceived by Knapp and Dunn, of which the bureau had no knowledge until after they filed their application for a patent.
*644 With respect to the Sawyer patent it must be held that his invention dates from the time of the filing of his application, there being no sufficient proof to the contrary. (The Barbed Wire Patent, 143 U. S., 275; Drewson v. Hartje Paper Mfg. Co., 131 Fed. Rep., 734; Eck v. Kutz, 132 Fed. Rep., 758.) In the case of Mergenthaler v. Scudder (11 App. D. C., 264, 278) it was held that “ The fact of conception by an inventor, for the purpose of establishing priority, can not be proved by his mere allegation, nor by his unsupported testimony, where there has been no disclosure to others or embodiment of the invention in some clearly perceptible form, such as drawings or model, with sufficient proof of identity in point of time. For otherwise such facile means of establishing prioritjr of invention would, in many cases, offer great temptation to perjury, and' would have the effect of virtually precluding the adverse party from the possibility of rebutting such evidence. Hence it has been ruled in many cases that the mere .unsupported evidence of the alleged inventor, on an issue of priority, as to the fact of conception and the time thereof, can not be received as sufficient proof of the fact of prior conception.” (Bates v. Coe, 98 U. S., 31, 34; Eck v. Kutz, 132 Fed. Rep., 758; Hisey v. Peters, 6 App. D. C., 73; Stevens v. Putnam, 18 O. G., 520; Farmer v. Brush, 17 O. G., 150; Brungger v. Smith, 62 O. G., 1511.) That seems to cover this case, and we see no reason why under the facts it should not apply here. (12 App. D. C., 335.)
Especially are we of this opinion, since the acts of the parties by their agreement and 'the transference of the broader claims of the Knapp and Dunn application to that of Sawyer were manifestly to avoid not only the status of Knapp and Dunn in their relation to the Bureau of Ordnance but as well the action of the officers of said bureau in their prior conception of the device so patented. The prima facie presumption of the patentability of the device arising from the letters patent issued to Sawyer is overcome by the convincing proof of the prior conception and use of substantially the same device by Knapp and Dunn so suggested, developed and used, as aforesaid.
Sawyer is the only one who testifies, and he orally (without either model or drawings disclosing his device), as to the *645 date prior to his application that he conceived the device so patented; but prior to his conception, as claimed, others had discussed the possibility of boring holes radially in the breech of a gun, as shown in Finding II.
Some days prior to the filing of the application by Sawyer for a patent he was informed by Bristol of a device he had conceived, a drawing of which he had sent to Chase April 27, 1904, and which he explained and illustrated to Sawyer, as set forth in Finding V. True, Sawyer at the time stated to Bristol that he had a scheme to prevent such accidents which was different from his, but in what particular he did not disclose either by word, model, or drawing; and on or about May 7, 1904, he came to Washington and- consulted with a patent attorney relative to filing an application for a patent, which was filed May 26,1904. Sawyer seemed to understand the plan thus shown him by Bristol, for he claimed to have a scheme which was different therefrom; and if so, he may fairly be classed as one sufficiently skilled in the art to comprehend the mechanical details essential to the construction of the device into a completed form for effective service. (Aron v. Manhattan Railway Co., 132 U. S., 84, and cases there cited. See also the case of Pope Mfg. Co. v. Gormully, 144 U. S., 248.)
This being true, it must be held that the patent of Sawyer was anticipated by the patent of Knapp and Dunn, if not by Bristol, the device for which was conceived by Chase and Latimer and was developed and tested by Knapp and Dunn, as aforesaid, under the direction of the Bureau of Ordnance. Therefore, notwithstanding the correspondence between the claimant and the Bureau of Ordnance respecting the use of said patents, no implied contract arises to make compensation therefor.
We deem it unnecessary to further consider the lack of novelty in the Sawyer patent, or to consider more specifically the claims in the Knapp and Dunn and the Sawyer patents— all of which are made part of the petition — as we are now concerned with the question whether an implied contract arises to make compensation for the use of patents; and what we have said along that line has been with reference thereto. That is to say, we have construed the language of the *646 correspondence in connection with the conception of the device by Bristol, Chase, and Latimer and the action of the Bureau of Ordnance in the development and test thereof, which is substantially the device so claimed to have been conceived by Sawyer, as otherwise the patent of Sawyer so anticipated by the Knapp and Dunn patent would be left standing alone in the correspondence.
Whether the patents in suit are lacking in invention, and therefore void by reason of the prior state of the art disclosed by Finding XIV, we will not now consider, nor have we drawn any conclusion therefrom in the findings other than the final conclusion that the claimant is not entitled to recover and the dismissal of his petition therefor. This was in effect the course pursued by the court in the case of Harley v. United States, supra, and this applies to the patent of Sawyer as well as to that of Knapp and Dunn.
It results that the claimant’s petition must be dismissed, which is accordingly done.
Howey, <T., was not present when this case was tried and took no part in the decision thereof.