# BEACH *v.* UNITED STATES.

### APPEAL FROM THE COURT OF ·CLAIMS.

**No. 7.** Argued October 30, 1912.—Decided December 2, 1912.

Recitals by the Court of Claims of the documents upon which the claimant's case alone can rest with a history of the transaction and an express finding that the evidence does not establish the transfer to the Government of that for which claimant demands compensation, with negative findings of claimant's· title, are sufficient findings of the ultimate facts to conform to the rules.

Whether claimant's claim rests upon an express or an implied purchase, by an officer of the Government, a lack of power on the part of that officer is a fundamental objection.

The provision in the Post Office Appropriation Act of July 13, 1892, 27 Stat. 145, c. 165, authorizing the Postmaster General to examine into transportation of mail by pneumatic tubes did not authorize the purchase of any apparatus or patents, and all parties including claimant were notified of this by the Postmaster General.

Under no other statutes enacted prior to the inception of the claimant's demand was the Postmaster General authorized to purchase or contract for apparatus or patents for pneumatic tubes.

The retention without express rejection of a proposal in answer to an advertisement of the Postmaster·General which expressly states that the proposals are for investigation and estimate and that the Postmaster General has no authority to· contract for expenditure of money does not constitute a contract either express or implied. ·

A proposal to sell to an officer of the United States that purports to be an assignment *in præsenti* but which is not in form or substance an assignment and which expressly states that it shall not be binding on· the proposer unless accepted by that officer before a specified date, does·not become a contract express or implied because of the nonaction by that officer on the proposal.

The retention by the officer of the United States without rejection of a proposal, which contains four different propositions of sale of the same article, only one of which could be accepted, cannot be treated as an acceptance of any one of the propositions.

He who is without authority to bind his principal by express contract cannot be held to have done so by implication; and the want of au-

thority on the part of the officer of the United States to whom
delivery is claimed is fatal to the establishment of an implied con-
tract.

In this case one claiming to have sold patents for pneumatic mail
tubes to the Postmaster-General having failed to show any use of his
devices or inventions by the Government, or that any devices or
inventions used were those covered by his patents, the Court of
Claims rightly dismissed his petition.

41 Ct. Cls. 110, affirmed.

THIS is an appeal from a judgment of the Court of
Claims dismissing the petition of claimant (now appellant)
whereby he sought to recover the sum of twenty millions
of dollars for certain inventions and letters patent per-
taining to pneumatic transportation alleged to have been
sold and transferred by him to the United States in the
year 1893, by agreement, express or implied, made be-
tween the claimant and the Postmaster-General.   41 Ct.
of Claims, 110.

The following is a sufficient outline of the findings of fact
in that court:

Prior to July 26, 1892, the claimant, James W. Beach,
had been granted certain letters patent for inventions or
improvements relating to pneumatic transportation, to
wit, letters patent No. 267,318, dated November 14, 1882,
and letters patent No. 444,038, dated January 6, 1891,
the object being to provide a continuous current of air
moving at high velocity through a tube or other conduit,
and thereby to transport the mails and all suitable com-
modities through such tube or conduit.   Ten prior patents
had been issued to other parties by the United States
Patent Office for original and new and useful improve-
ments in pneumatic conveyors or devices for the trans-
mission of letters, messages and small packages through
small pipes, the first of which patents was issued as early
as the year 1864.   Pursuant to the authority of § 6 of the
post-office appropriation act of July 13, 1892 (27 Stat.

145, c. 165), Hon. John Wanamaker, then Postmaster-General, caused the following advertisement to be published in several newspapers:

"*Mail Service by Pneumatic Tubes or Other Systems.*

"POST-OFFICE DEPARTMENT,
"WASHINGTON, D. C., *July* 26, 1892.

"Authority is given the Postmaster-General by the provisions of the act making appropriations for the service of the Post-Office Department, approved July 13, 1892, 'to examine into the subject of a more rapid dispatch of mail matter between large cities and postoffice stations and transportation terminals located in large cities by means of pneumatic tubes or other systems,' with the view of ascertaining the cost and advantages of the same.

"Acting upon this authority, I hereby give notice to all persons who are the inventors, assignees, or otherwise owners of any pneumatic tube or other device suitable for and adapted to said service to present in writing, under seal, on or before Thursday, the 8th day of September, 1892, addressed to the 'Postmaster-General, Washington, D. C.,' and marked 'Rapid Dispatch of Mails,' a full description of such tube or device, together with a statement of the evidence of title to or ownership of the same, which evidence may subsequently at any time be required by the Postmaster-General. Said description must state the kind and quality of motive power used in operating the same; the method of its application; the capacity of the tube or device, and offer to submit a test; the precise place and terminals where it is proposed to conduct the test; the date at which the tube or device will be in condition to be tested, and the time that will necessarily be occupied in making the test; and, generally, anything else whereby the Postmaster-General can judge of the relative value

of the several tubes or devices that may be submitted and the adaptability of each to said service.

"It is preferred that the tests aforesaid be conducted in the city of New York, Brooklyn, Philadelphia, Chicago, or Washington, D. C., and between adjacent cities, or between a post-office and substation or transportation terminal.

"It is also requested that each of said descriptions be accompanied by a proposal offering to license to, or otherwise invest in, the United States the right to use the tube or device, to lease by the year, or to sell, assign, and transfer it to the United States as a purchaser.

"The tests aforesaid must be made without cost to the United States, and upon the express condition that the person offering said tube or device waives all claim against the United States for any expense attending the construction, tests, or preparation for said tests, or any other expense attending the same. The Postmaster-General has no authority in law to contract for the expenditure of money for the use of or purchase of any such invention, nor is there any existing appropriation out of which the cost of the same could be paid.

"The right is reserved to decline any test of any tube or device submitted in response to this advertisement, and to reject any proposal that may be made.

"The propositions and result of all experiments will be the subject of a report to Congress.

"JOHN WANAMAKER,
"*Postmaster-General.*"

Under date August 20, 1892, the claimant wrote to the Postmaster-General stating that pursuant to the advertisement dated July 26, 1892, he desired to submit a description of a pneumatic tube or device invented and owned by him suitable for and adapted to the rapid dispatch of mail matter between large cities and post-office

stations, and also desired to accompany said description
with a "proposal offering to license to or otherwise invest
in the United States the right to use the tube or device, to
lease by the year, or to sell, assign and transfer it to the
United States" as a purchaser; and inquired whether his
proposal should or should not name a price at which he
(Beach) as the owner aforesaid would so license, lease or
sell, assign and transfer to the United States the right to
use said tube or device. To this the Postmaster-General
replied by letter stating—"The advertisement for pneu-
matic tubes states each offer shall be accompanied by
proposals to license to, or otherwise invest in, the United
States the right to use the tube or device, to lease by the
year, or to sell, assign or transfer to the United States.
Such proposals must, of course, fix some price to be of
any value."

Thereupon the claimant, under date August 30, 1892,
submitted to the Postmaster-General the following:

*"Proposal of Beach.*

"[Law Office of James W. Beach, 94 Washington Street,
Chicago, Illinois.]

"Rapid Dispatch of Mails.

"Hon. John Wanamaker, Postmaster-General, Washing-
ton, D. C.

"SIR: In accordance with the advertisement of the
Postmaster-General, which said advertisement is dated
July 26th, 1892, and is entitled 'Mail service by pneumatic
tubes or other systems,' I, the undersigned, James W.
Beach, of Chicago, Illinois, hereby propose and offer to
license to or otherwise invest in the United States the right
to use the said two penumatic devices, or either of them,
that is to say, the devices mentioned and described in
Letters Patent No. 267,318 and in Letters Patent, No.
444,038, granted by the United States to the undersigned,
James W. Beach, mentioned and described in the de-

scription of said devices accompanying this proposal, and signed by said James W. Beach (said two devices being also described in Exhibits 'C' and 'D' annexed to the description of said devices filed herewith in the office of the Postmaster-General by the Beach Pneumatic Conveyor Company), or to lease by the year, or to sell, assign, and transfer it to the United States as a purchaser, said right being the exclusive right in and under said letters patent, and each of them, in and to all the States and Territories of the United States, save and excepting therefrom the States of Maine, New Hampshire, Vermont, Connecticut, Rhode Island, Massachusetts, Michigan, and the District of Columbia, heretofore sold and assigned to said Beach Pneumatic Conveyor Company by the undersigned.

"And I, the undersigned James W. Beach, hereby propose and offer as aforesaid to license to or otherwise invest in the United States all of my said right in, to, under, and by virtue of said letters patent, and each of them, in and to all the States and Territories of the United States, save and excepting said States of Maine, New Hampshire, Connecticut, Rhode Island, Massachusetts, Michigan, and the District of Columbia, for and in consideration of the payment to me, the said James W. Beach, my heirs, executors, administrators, and assigns, by the United States of the sum of eight hundred thousand dollars ($800,000) on the first day of September in each year during the term of said license or leasing or investment in the United States as aforesaid.

"And I, the undersigned, James W. Beach, hereby further propose and offer to sell, assign, and transfer to the United States all of my said right derived and possessed by me under and by virtue of said two letters patent, in and to all the States and Territories of the United States, save and excepting therefrom the said States of Maine, New Hampshire, Vermont, Connecticut, Rhode Island,

Massachusetts, Michigan, and the District of Columbia, for the sum of twenty millions of dollars ($20,000,000), to be paid by the United States to me, the undersigned, James W. Beach, my heirs, executors, administrators, and assigns, on or before the first day of September, A. D. 1893, and upon payment of said sum of money last mentioned to me at the time and as aforesaid by the United States, I will sell to and make and execute to the United States a good and sufficient assignment and transfer of all of my said rights granted and by me possessed as aforesaid under and by virtue of said two letters patent in and to all the States and Territories, save and excepting therefrom the said States of Maine, New Hampshire, Vermont, Connecticut, Rhode Island, Massachusetts, Michigan, and the District of Columbia.

"And I, the undersigned, hereby further propose and offer to so license, to lease to, or otherwise invest in the United States all of my said right under and by virtue of said two letters patent (for, and the said pneumatic devices or conveyers to be used solely and only for the purpose of collecting and transmitting the United States mails, and for no other purpose or purposes) in said entire United States, save and excepting therefrom the said States of Maine, New Hampshire, Vermont, Connecticut, Rhode Island, Massachusetts, Michigan, and the District of Columbia, upon the express condition that the United States shall pay therefor and in consideration thereof to me, the undersigned, James W. Beach, my heirs, executors, administrators, and assigns, on the first day of September in each year during the term of said license, or leasing, or investment in the United States the sum of three hundred and fifty-four thousand five hundred and eighty dollars and twenty cents ($354,580.20), being the amount of money expended annually by the United States for that branch of the postal service known as the 'Regulation wagon, mail-messenger, mail station, and transfer service'

in twenty-six cities only, not including the cities of Washington, D. C., Providence, R. I., Boston, Mass., and Detroit, Mich., as shown on page 112 of the report of the Postmaster-General, 1888.

"And I, the undersigned, hereby further propose and offer as aforesaid to license or lease to the United States for mail purposes only, as aforesaid, a right or rights, and upon reasonable and equitable terms, and for a reasonable consideration to be paid to me, the undersigned, my heirs, executors, administrators, or assigns therefor, by the United States, the amount thereof to be agreed upon by the United States and the undersigned James W. Beach (either by mutual agreement or by arbitration) a right or rights as aforesaid to construct and operate within said entire United States, or either of them (save and excepting therefrom said States of Maine, New Hampshire, Vermont, Connecticut, Rhode Island, Massachusetts, Michigan, and the District of Columbia), one or more of said pneumatic conveyers or devices, said consideration to be based upon the mileage of the pneumatic tubes to be used, or upon a small percentage of the total (present) annual cost of the transportation of the United States mails within said United States.

"This proposal is made upon condition and the same shall not be binding upon the undersigned unless the United States shall by the Postmaster-General accept said propositions, or one of said propositions, and shall notify me, the undersigned, of said acceptance on or before the first day of August, A. D. 1893.

"In witness whereof I have hereunto set my hand and seal at Chicago, Illinois, this thirtieth day of August, A. D. 1892.

"JAMES W. BEACH. [SEAL].

"In presence of—
     "EDWARD J. QUENNY (?)
     "JACOB H. HOPKINS."

This proposal was accompanied with a description of the several devices described in letters patent No. 267,318 and No. 444,038, and with a written offer—"At our own expense to demonstrate in a positive and convincing manner that the said pneumatic devices will when in operation, do and perform all that is claimed in the accompanying 'Description' of said devices. . . . The undersigned is prepared to enter into a contract with the United States to construct or cause to be constructed (and operated, if so desired) one or more lines of said pneumatic devices in any city of the United States or between any cities or towns in the United States (whether near or far apart), upon terms and for a consideration to be mutually agreed upon, and upon executing said contract the undersigned will secure the performance of any undertaking which he may so enter into by a good and sufficient bond."

Seven other persons or companies answered the advertisement of the Postmaster-General for bids, and on September 15, 1892, he appointed a commission of three expert postal officials to examine into the merits of the pneumatic tubes and other systems so advertised for, and that commission reported to the Postmaster-General in writing on September 29, 1892, embodying in its report a brief schedule of the several propositions, and stating the general conditions or terms upon which the owners would place their respective devices at the disposal of the Government or submit the same to its experimental test. Among these were:

"No. 3. Pneumatic Transit Company of New Jersey. Pneumatic. Will put down line between main post-office in Philadelphia and substation at Third and Chestnut Streets, without cost to Government and without obligation to purchase or lease. After one year's trial will lease or will sell at cost if desired by Government."

"No. 8. James W. Beach and the Beach Pneumatic Conveyer Company, Chicago. Will make contract to

construct experimental line for a consideration to be mutually agreed upon. Will sell or lease. Experimental line to be in readiness in from four to twelve months from October 1, 1892."

The report contained the following specific recommendation:

"The offer known as 'No. 3,' submitted by the Pneumatic Transit Company of New Jersey, is to put down in the streets of Philadelphia, between the post-office and the East Chestnut street branch post-office, pneumatic tubes to connect these two offices, without expense to the Department, and without charge for one year's use of the same, and without liability thereafter. This offer is the best that has been received, and it is believed to be highly advantageous to the Department, because it will enable it to make an immediate and practical test of the pneumatic system. Your committee, therefore, desire to make the copy of the proposition No. 3, hereto attached, a part of this report, and they recommend prompt acceptance of the offer, that the test may be made without delay.

"It is worth while to add that in our judgment the placing of a line unconditionally at the disposal of the Department for practical, every day use will go far towards demonstrating, in a general way, the extent to which it may be made possible to substitute a tube system for the existing manner of performing transfer service within large cities, where time enters so largely into the necessities of the people.

"The committee desire, as well, to emphasize that in making recommendation that an arrangement be made with the Pneumatic Transit Company of New Jersey for the construction of an experimental line in Philadelphia, it does not wish to be understood as passing upon the merits of the system itself, that being a matter for consideration hereafter; in like manner as it will be our purpose to give consideration to each one of the systems that have been submitted."

Pursuant to this report the Postmaster-General, on October 20, 1892, entered into a contract with the Pneumatic Transit Company of New Jersey, providing for the installation by that company at its own expense of a line of pneumatic tubes in the City of Philadelphia connecting the main post-office with the sub post-office and its operation for a period of one year after completion in such practical tests as the postmaster of Philadelphia and the Postmaster-General might see fit to conduct; the tests to be made without cost to the United States beyond the use of surplus steam from the boilers in the post-office building. The agreement provided that at the expiration of the year the Transit Company would lease said pneumatic tubes to the United States year by year, or would sell the same to the United States at cost, and would authorize the use by the United States of all the patented inventions in the said pneumatic tubes and devices connected therewith, by license, sale or assignment, as might then be agreed upon.

Similar contracts were entered into by the Post-office Department for like transportation of United States mail at Philadelphia, New York, Brooklyn, and Boston.

The Pneumatic Transit Company, which was incorporated under the laws of the State of New Jersey in 1892, had in its employ as an engineer one Birney C. Batcheller. He designed some of the terminal apparatus that was first used in Philadelphia; and a system of tubes and devices which carried mails pneumatically was constructed under his direction and supervision. While in the employ of said company said Batcheller extensively investigated the subject of pneumatics, and subsequently applied for and was granted letters patent for various improvements in pneumatic tube delivery devices. Ten of such patents were granted before the filing of Beach's petition in the Court of Claims, and they were used, applied and operated by the Pneumatic Transit Company. Twenty of such

patents were granted to Batcheller subsequent to the filing of Beach's petition, and these likewise were used, applied and operated by the Pneumatic Transit Company.

Among the specific findings of the Court of Claims are the following:

6. The evidence does not establish to the satisfaction of the court that plaintiff's letters patent were conveyed or delivered to the Postmaster-General.

9. The evidence does not establish to the satisfaction of the court that James W. Beach, the claimant herein, was the first inventor of the devices for pneumatic transportation used, operated, and conducted for the transportation of mail matter by persons contracting with the United States or by the agents of the United States.

10. The evidence does not establish to the satisfaction of the court that the letters patent issued to the claimant, James W. Beach, covered the same devices actually put into practical operation and used by the corporation which, under an act of Congress, contracted with the Postmaster-General for transmitting mail matter through pneumatic conveyors.

Upon the foregoing findings of fact the Court of Claims decided as a conclusion of law that the claimant was not entitled to recover, and that his petition should therefore be dismissed.

*Mr. James W. Beach pro se.*

*Mr. Assistant Attorney General Thompson*, with whom *Mr. Walter H. Pumphrey* was on the brief, for the United States.

Mr. Justice Pitney, after stating the case as above, delivered the opinion of the court.

The appellant, by his amended petition, asked for a recovery against the Government in the sum of twenty

million dollars and interest, as the purchase price upon an
alleged assignment and transfer in the year 1893 of certain
inventions pertaining to pneumatic transportation for
which letters patent had been theretofore issued to him
as mentioned in the findings. His first insistence was and
is that these inventions and patents had been purchased
by the Postmaster-General under an express agreement
to pay him the sum mentioned as consideration. In the
alternative he insisted and now insists that at least the
Government, with his consent, entered into the use and
enjoyment of his devices and letters patent in the year
1893, and has ever since then used and enjoyed them,
and ought to pay him their fair value, which he places at
twenty million dollars. The facts from which the alleged
contract of purchase (express or implied) is sought to be
deduced are set forth in the findings of fact above referred
to. These findings are criticised by the appellant on the
ground that they constitute a mere recital of the evidence,
instead of an ascertainment of the ultimate facts. This
criticism, under the circumstances of the present case, is
captious. The court has set forth the documents upon
which alone must rest appellant's contention of an express
contract, if that contention have any substantial basis;
and has likewise set forth the history of the transactions
from which, if at all, an agreement must be implied, if
there was no express contract. At the same time the court
has expressly found that "The evidence does not establish
to the satisfaction of the court that plaintiff's letters
patent were conveyed or delivered to the Postmaster-
General;" and has made a similar negative finding re-
specting the appellant's claim to be the first inventor of
the devices for pneumatic transportation used, operated
and conducted for the transportation of mail matter by
persons contracting with the United States or by the
agents of the United States; and a similar negative finding
respecting his claim that his letters patent "covered the

same devices actually put into practical operation and used by the corporation which under an act of Congress contracted with the Postmaster-General for transmitting mail matter through pneumatic conveyors."

A fundamental obstacle stands in the way of appellant's claim, whether it be rested upon an express or an implied purchase of pneumatic devices or of patented inventions relating thereto. We refer to the lack of power on the part of the Postmaster-General to contract in behalf of the Government of the United States for such a purchase. Sec. 6 of the post-office appropriation act of July 13, 1892 (27 Stat. 145, c. 165), provided merely—"that the Postmaster-General is hereby authorized and directed to examine into the subject of a more rapid dispatch of mail matter between large cities, and post-office stations and transportation terminals located in large cities, by means of pneumatic tubes or other systems, and make report upon the expense, cost and advantages of said systems when applied to the mail service of the United States, and the sum of ten thousand dollars is hereby appropriated therefor."

Manifestly the appropriation was intended for the purpose of investigation and report, and did not extend to authorizing such a purchase as that which the appellant alleges.

Of this limitation upon the authority of the Postmaster-General the appellant had plain notice at the inception of his dealings with that official. Not only did the advertisement of July 26, 1892, begin by referring to the above-recited clause of the appropriation act, but it contained, near its close, this express declaration: "The Postmaster-General has no authority in law to contract for the expenditure of money for the use of or purchase of any such invention, nor is there any existing appropriation out of which the cost of the same could be paid."

Appellant insists that under other acts of Congress the

Postmaster-General had authority to purchase the inventions and devices in question. Reference is made to § 3965, Rev. Stat., enacting that "The Postmaster-General shall provide for carrying the mail on all post-roads established by law, as often as he, having due regard to productiveness and other circumstances, may think proper." This is one of the sections that prescribe the general duties of the Postmaster-General, and cannot be fairly treated as authority for making the alleged contract of purchase. Successive appropriation acts are referred to. Act of June 9, 1896 (29 Stat. 313, 315, c. 386), authorizing the Postmaster-General, in his discretion, to use not exceeding $35,000 in the transportation of mail by pneumatic tube or other similar devices, contains no authorization of purchase. Act of March 3, 1897 (29 Stat. 644, 646, c. 385), authorizes the use of not exceeding $150,000 in the transportation of mail by pneumatic tube or other similar devices, "by purchase or otherwise." But this was enacted more than four years after the last transactions (so far as the record shows) between the appellant and the Postmaster-General, out of which it could possibly be claimed that any contract, express or implied, had arisen. For like reasons, subsequent statutes that are referred to (Act of June 13, 1898, 30 Stat. 440, 442, c. 446; Act of March 1, 1899, 30 Stat. 959, 963, c. 327; Act of June 2, 1900, 31 Stat. 252, 258, c. 613; Act of July 1, 1898, 30 Stat. 597, 615, c. 546; Act of March 3, 1899, 30 Stat. 1074, 1092, c. 424) must be rejected. They indicate that pneumatic tube service was in operation in Philadelphia, New York City, Brooklyn, Boston, and perhaps elsewhere; but they have no reference to any transactions between the Postmaster-General and the appellant.

But if the obstacle arising out of the actual and avowed want of authority on the part of the Postmaster-General could be overcome, the appellant's case is still fatally

weak upon the question whether any contract was in fact made, either expressly or by implication from the conduct of the parties.

The contention that there was an express contract rests upon the fact that the Postmaster-General retained the appellant's proposal without in terms rejecting it. The argument is untenable for several reasons, some of which may be stated.

First, it ignores the fact that the proposal was submitted in response to an advertisement which plainly stated that the proposals were desired for the purpose of investigation and estimate merely, and that the Postmaster-General had no authority to contract for the expenditure of money for the use or purchase of any such invention.

Secondly, it treats the appellant's proposal as an assignment *in presenti* of his inventions and patents to the United States, and nothing else. It was not, either in form or substance, an assignment, but (so far as it had reference to a sale), merely purported to state the terms upon which Beach proposed and offered to sell, and manifestly contemplated that something should be done on each side before the inventions should in fact become the property of the United States. It is significant that one of the terms of the proposal was: "This proposal is made upon condition and the same shall not be binding upon the undersigned unless the United States shall by the Postmaster-General accept said propositions, or one of said propositions, and shall notify me, the undersigned, of said acceptance on or before the first day of August, A. D. 1893."

Thirdly, the proposal was not a mere offer to sell the inventions and patents. It contained four several propositions, acceptance of either one of which involved rejection of the remaining three; that is to say, Beach offered (a) to invest in the United States all of his rights under

the patents in all States and Territories excepting Maine, New Hampshire, Connecticut, Rhode Island, Michigan, and the District of Columbia, in consideration of $800,000 per annum, this offer being without limit as to the use to which the patented devices should be put; (b) to assign and transfer to the United States all rights in the patents in all the States and Territories, saving those just mentioned for twenty million dollars, (this of course contemplated an absolute sale); (c) to invest in the United States all his rights under the two patents ("the said pneumatic devices or conveyors to be used solely and only for the purpose of collecting and transmitting the United States mails, and for no other purpose") in the entire United States excepting the States already mentioned and the District of Columbia, in consideration of an annual payment of $354,580.20, and (d) to "license or lease to the United States for mail purposes only" the right to construct and operate his pneumatic conveyors anywhere in the United States, excepting the States already mentioned and the District of Columbia, "upon reasonable and equitable terms, and for a reasonable consideration to be paid to me . . . the amount thereof to be agreed upon by the United States and the undersigned, James W. Beach, (either by mutual agreement or by arbitration), . . . said consideration to be based upon the mileage of the pneumatic tubes to be used, or upon a small percentage of the total (present) annual cost of the transportation of the United States mails within said United States." It is evident that a retention of the proposal without dissent could not be deemed an acceptance of proposition (b) any more than of (a), or of (c), or of (d); and so the act of retention (if there were no obstacle arising out of the want of authority on the part of the Postmaster-General) cannot be treated as an acceptance of either one of the four several propositions.

For these and other reasons, the Court of Claims was

clearly right in holding that the evidence did not establish that the letters patent were conveyed or delivered to the Postmaster-General.

The theory of implied contract is likewise untenable. In the first place, the want of statutory authority on the part of the Postmaster-General to represent the Government in making an express contract is equally fatal to the theory of an implied contract. For it is fundamental that he who is without authority to bind his principal by an express contract cannot be held to have done so by implication.

Another and sufficient answer is that the appellant has failed to show any use by the Postmaster-General or his successors of the patented inventions or devices of the appellant, or to show that the contractors or agents of the Government have made any use of them. His case here fails because he does not show that the inventions or devices used are those covered by his patents.

Therefore the Court of Claims correctly held that the appellant had not made out a case of contract.

*Judgment affirmed.*