Campbell, Chief Justice,
reviewing the facts found to be established, delivered the opinion of the court:
Recovery is sought in this case on account of the use by the Government in its Public Printing Office of an alleged patented invention. Involving, as it does, a claim arising prior to the act of June 25, 1910, 36 Stat. L., 851, which confers certain jurisdiction on this court of suits for the recovery of compensation by the owner of an invention used by the Government, the questions here presented must be solved without reference to said act.
The plaintilf, the Curved Electrotype Plate Co. of New York, being the assignee of the alleged inventor, Patrick M. Furlong, bases its claim upon patent No. 435,036 for a method of bending electrotype plates. The Court of Claims has not jurisdiction of any infringement of plaintiff’s patent. Schillinger case, 155 U. S., 163. Any right of recovery therefore must be based upon a contract, express or implied, between the plaintiff and the Public Printer. Russell case, 82 U. S., 516.
Recognizing this condition the plaintiff contends: (1) That there was an express contract between the plaintiff represented by its officers on the one part and the United States represented by the Public Printer on the other part for the use of the invention claimed by the plaintiff and (2), that if there was no express contract there was an implied contract for compensation growing out of the use of the alleged invention by or with the sanction of the Public Printer in the Government Printing Office under such circumstances that will justify a conclusion that the Government impliedly agreed to pay a reasonable compensation for such use. The defendants deny there was either an express or implied contract between the parties; that the *264 Public Printer, T. E. Benedict, was not authorized to act for the United States in said particular, and that the use, if any, made of the alleged invention by the Government was an infringement of the patent. The defendants also insist that the alleged invention covered by plaintiff’s letters patent had been anticipated by others, and they adduce evidence to show the prior state of the art which they claim proves the invalidity of the plaintiff’s claims, and further that the alleged invention claimed to be covered by patent No. 435,036 was developed by said Furlong at the Government’s expense while he was still an employee of the Government with material and appliances provided by the latter.
Furlong was employed in the Government Printing Office and was requested by the Public Printer to find a better method than was then in use for bending electrotype plates. He made experiments, used material and appliances furnished by the Government, and later secured patents. The results of that work were adopted by the Government and he knew of the adoption and use.
Upon this point we need only quote the following from Gill v. United, States, 160 U. S., 426, 429.
. This case raises the question, which has been several times presented to this court, whether an employee paid by salary or wages, who devises an improved method of doing his work, using the property or labor of his employer to put his invention into practical form, and assenting to the use of such improvements by his employer, may, by taking out a patent upon such invention, recover a royalty or other compensation for such use. In a series of cases, to which fuller reference will be made hereafter, we have held that this could not be done.
The plaintiff does not question the law as announced in the Gill case and makes no claim for any compensation for the use of said patents issued while Furlong was employed in the Government Printing Office, but claims that the last patent issued to plaintiff as assignee of Furlong being the one in question here, does not come within the scope of said case, because it says that Furlong had ceased to be an employee of the Government prior to the application for the *265 last-named patent and the invention was developed subsequent to his leaving the Government’s employ.
If an express contract be shown the defendants can not set up the invalidity of the patent as a defense to an action upon such contract. Having expressly contracted to use and pay royalties or compensation for a patented invention with full knowledge of what he was contracting for, a party will not be heard after receiving the benefits of the use of the process to say that the payment stipulated to be made- should not be made on the ground that the patent in invalid. Harvey Steel Co. v. United States, 38 C. Cls., 662, affirmed in 196 U. S., 310; Eclipse Bicycle Co. v. Farrow, 199 U. S., 581. A different rule is applicable, however, where the plaintiff’s reliance is upon an implied contract. In the latter case there is no estoppel to impeach the patent, and the defendant may prevail by showing that the alleged invention is anticipated in the prior state of the art, or is otherwise invalid. Farnham case, 49 C. Cls., 39; Société Anon. Des Ancien Étab, Cail v. United States, 43 C. Cls., 25, 224 U. S., 309.
The plaintiff is a corporation to which was assigned certain letters patent including those involved in this case in payment for its capital stock. The stockholders were G. H. Benedict, Patrick Furlong, Timothy Sullivan, and T. E. Benedict. The first three named were officers in the corporation during the period in question. T. E. Benedict became Public Printer in May, 1894. Any contractual obligations with reference to the alleged patent arose out of conversations or dealings between said Sullivan, then president of the corporation, or G. H. Benedict, an officer thereof, and T. E. Benedict as Public Printer.
The duty of the Public Printer is defined by section 3760, R. S., where he is called the Congressional Printer. Later, by the act of June 20, 1874, 18 Stat. L., 88, the title was changed to Public Printer and his appointment by the President by and with the advice and consent of the Senate provided for. With said change in the title of the office, section 3760, R. S., was reenacted as section 18 of the act entitled “An act providing for the public printing and binding and the distribution of public documents,” approved *266 January 12, 1895, .28 Stat. L., 601. This statute more fully defines the powers and duties of the Public Printer and among other things provides:
“ Sec. 34. Neither the Public Printer, chief clerk, foreman of printing, foreman of binding, nor any of their assistants shall, during their continuance in office, have any interest, direct or indirect, in the publication of any newspaper or periodical, or in any printing, binding, engraving, or lithographing of any kind, or in any contract for furnishing paper or other material connected with the public printing, binding; lithographing, or engraving; and for every violation of this section the party offending shall, on conviction before any court of competent jurisdiction, be imprisoned in the penitentiary for á term of not less than one nor more than five years, and shall.be fined not exceeding five hundred dollars.”
The claim of the plaintiff is that the use of his invention commenced during Benedict’s term of office and continued for about three years, or during his incumbency of said office.
It is very clear that there was no express contract between the plaintiff and the Public Printer relative to said invention or its use by the Government. No terms for a contract were discussed, submitted, or agreed to. The conversations, testified to by the plaintiff’s officers, occurring in the fall of 1894, wherein they suggested that compensation should be accorded them and the Public Printer refused to consider the question of compensation and in effect said that he would use any patented device which would, in his opinion, facilitate the work in the Government Printing Office regardless of any interests of the inventors or owners, precludes any idea of a contract being made between the said parties. An express contract is where the terms of it are openly avowed in writing or orally at the time of its making in such form as evinces an intention to contract. The two officers of the plaintiff who testify in this case admit that no offer to make a- contract for the use of the alleged invention was made, though they claim they stood ready to make one, and further, they say the Public Printer was not disposed to make a contract. Under these conditions there was no ex *267 press contract made between the parties. Russell's case, 182 U. S., 516, 530.
The plaintiff, relying upon the Palmer case, 128 U. S., 262, the Berdan case, 156 U. S., 552, and Societe Anon. Cail, 224 U. S., 309, and certain cases in this court, insists there was an implied contract, and the defendants contend that if said'invention was used at all such use was an infringement. In each of said cases it appeared that the inventor or owner had invited the use of the patent involved; that an examination of the device or improvement had been made by a board or other authority with a view to adopting something suitable to the object in view; that its merits had been explained by the owner or inventor; that the thing used was definitely ascertained; and that the patented invention in those cases had its principal value in the Government’s use of it. In the Palmer case the use of the improvement in infantry equipment was approved by the Secretary of War after it had been experimented with by a board of officers appointed for the purpose, to whom it was exhibited and explained by the inventor; the board favorably reported upon it and it was recommended by the General of the Army. The said improvement covered by the patent was used by the Government, the use of the particular thing was shown and an intention to pay for that use was implied. In the Berdan’s Firearms Mfg. Co. case the particular device in question was used “ in accordance with its wish and with the thought of compensation therefor.” • It was said, page 568: “ There was certainly no denial of the patentee’s right to the invention, no assertion on the part of the Government that the patent was wrongfully issued, no claim of the right to use the invention regardless of the patent, no disregard of all claims of the patentee, and no use in spite of protest or remonstrance” ; and further, it appears that the officers of the defendants having superintendence of the manufacture of muskets “ were using in the Springfield muskets Berdan’s invention, that they used it with his permission * * *, that they used it with the understanding that the Government would pay for such use as for other private property which it might take, and this *268 although they did not believe themselves to have the authority to agree upon the price” (page 569).
The Societe Anon. Cail case follows said two cases and is declared to be similar to the Berdan case. The Government’s use followed an invitation to the patentee or his assignee to present the details of the device to a board of officers appointed to investigate the utility of such inventions, which he did, and “ the record shows that compensation was contemplated.” The facts in the present case are not like those in the cases to which we are referred. As stated, the powers of the Public Printer to bind the United States as upon an implied contract to pay for the use of an invention are governed by the statute authorizing him to “purchase all materials and machinery which may be necessary for the Government Printing Office,” R. S., 3760, and 28 Stat. L., 603, sec. 18. He was required to report annually to Congress in detail the condition of that office, and, among other things, “ such other information touching all matters connected with the Printing Office as may be in his possession,” R. S., 3821, and 28 Stat. L., 604, and to submit to the Secretary of the Treasury annually in time to have the same embraced in the estimates from that department detailed estimates of the necessary expenses of the Printing Office for the ensuing fiscal year. It does not appear in evidence that in any of his reports made during the years of his incumbency the Public Printer referred to the use of the alleged invention or a possible liability upon the Government growing out of such use. And this circumstance is worthy of some consideration when we come to determine whether the Public Printer intended to make a contract with plaintiff or its representatives. Assuming, however, that the Public Printer was empowered by the statute to make a contract for the use of said invention, the facts do not show that he did so.
When T. E. Benedict was reappointed Public Printer and entered upon the discharge of his duties, he found a number of web and rotary presses in use, and during his incumbency made additions to the machinery in the office. He had machines for bending electrotype plates to be used upon the *269 presses furnished by manufacturers and dealers. In the fall of the year 1894 his brother, G. H. Benedict, called upon him and claimed that he was using in said office the plaintiff’s invention and expressed the thought that the company was entitled to compensation. The Public Printer stated to him, and also at other times stated to the president of plaintiff corporation, that if he found any patented device of any use to the Government Printing Office he used it regardless of the inventor’s or owner’s interests, leaving the latter to seek relief in the courts, and he declined to discuss or consider any question of the amount of compensation, if any. This action was not consistent with the idea that contractual relations were being created between the plaintiff and defendants. Russell's case, 182 U. S., 513. The plaintiff’s representatives did not propose any contract, and when the attitude of the Public Printer relative to compensation was stated there was a protest by G. H. Benedict against the use unless there was to be compensation.
The plaintiff did not make or cause to be made any machine or plates. What the Government used in its printing office were electrotype-bending machines obtained in the open market from manufacturers or dealers who made or sold them with or for use with their presses. Whether these manufacturers and dealers were using the one or the other of the inventions shown in the findings or were using without license the plaintiff’s invention, if it was valid, it is clear that the Government’s use under the circumstances stated-would not impose a contractual obligation to pay the plaintiff for its use of the machines so acquired. The jurisdiction of the Court of Claims in such case rests upon contract, express or implied, and a plaintiff can not by the device of waiving the tort make a case of implied contract against the Government. Bigby's case, 188 U. S., 407, 409. In that case the Supreme Court adopts the following language from Cooper v. Cooper, 147 Mass., 373: “A right of action in contract can not be created by waiving a tort, and a duty to pay damages for a tort does not imply a promise to pay them upon which assumpsit can be maintained.”
When Furlong made application for the patent in question, his claims 1, 2, and 3 were rejected by the examiner, *270 and his application without additional oath was amended by a substitution of new claims for those rejected. As finally issued the patent covers certain claims which are expressed by one of plaintiff’s expert witnesses as follows: “ The first two claims covered a method and the third covered a machine, in the operation of which the method is necessarily involved.” The novelty claimed evidently resided in the character or quality of the steel bending plates, the plaintiff’s patent claim being for a strong flat resilient plate or a strongly resistant resilient plate to distinguish it from the thin and less highly tempered plates conceded by plaintiff to be used under the Scott and other patents. The thinness or thickness of the plates used, together with their resiliency or temper, are material if we must determine the question of anticipation claimed in this case by the defendants who question the validity of plaintiff’s patent. The evidence does not show the resistance to bending, the degree of resiliency, or the temper or hardness of the steel used in the said office for the bending plates in connection with the alleged use of the plaintiff’s invention for which compensation is claimed. It does appear that resilient steel plates were used, and, as has been said, these were bought in the market, to be used in connection with machines adapted to bending plates for use in particular presses. Resilient steel plates were used in connection with the Scott machines in presses. It is manifest, therefore, that the statement of some of plaintiff’s witnesses and of the Public Printer himself that plaintiff’s invention was being used in the Government Printing Office must be accepted as a conclusion or opinion of the witness, not necessarily binding on the court in the absence of proof as to the kind and qualities of plates actually used. The identity of the thing used as being that covered by the patent is not established here, as it was in the Palmer and other cases mentioned. The Public Printer- refused to consider the question of compensation, referring plaintiff’s agents to the Court of Claims. As was said in the Russell case:
“ No contract, therefore, based on the action of that office can be claimed. If petitioners have suffered injury, it has *271 been through the infringement of their patent, not by a breach of contract, and for the redress of an infringement the Court of Claims has no jurisdiction.”
There is another reason why, in this case, no contract can be found. Thomas E. Benedict was a stockholder in plaintiff corporation and had advanced the money necessary for its incorporation, the payment of fees, and other charges, amounting to several thousand dollars. When he was reappointed Public Printer in 1894 he transferred his stock in said company, together with other stock he owned in work incident to printing, to his sister-in-law, the wife of G. H. Benedict. These transfers were made, as he states, not only with a view of coming within the provisions of the statute which affected the office of Public Printer, “ but for the reason that I was under a great obligation to her as having brought up an infant son of mine, and I had no other purpose then, and have none now, in connection with this company or this stock, if it has any value, except to give the full benefit of it to my brother in case he is able to repay me the advances I have made for patents in this country, England, and Canada, and the corporation fees connected therewith.”
The statute, R. S., 3765, forbade the Public Printer having any interest, direct or indirect, in any contract for furnishing paper or other material connected with the public printing, binding, lithographing, or engraving, under penalty of imprisonment and fine, and section 1783, Revised Statutes, forbids any person directly or indirectly interested in the pecuniary profits or contracts of a commercial corporation acting as' an officer or agent of the United States for the transaction of business with such corporation. It is not clear that by the alleged transfer to his sister-in-law of his stocks in this and other concerns Mr. Benedict intended to deprive himself of all ownership therein. Certainly the statement that his purpose was to give the full benefit of the stock in plaintiff corporation to his brother in case the latter was able to repay him the advances he had made is inconsistent with an absolute transfer of his stock to his sister-in-law, because, if it was hers, he could not give his brother the benefit of it, even if the advances were repaid. Certain *272 it is that Mr. Benedict regarded himself as equitably entitled to compensation out of the corporation’s receipts, and he says as much. It is significant that the only claim which the corporation had asserted in 1898, when this action was brought, or later, when witnesses were examined, was that against the United States, notwithstanding if its patent was valid and the machines used by the Government were covered by that patent other parties, especially those who made and sold the machines to the Government, would be liable for an infringement.
If the purpose was to impose a liability on the Govenment and thereby establish the validity or utility of the patent, it was the more important that the officer acting for the Government should be free from any dictate of self-interest. The Public Printer could not act for the Government so as to bind it when he had an interest direct or remote in the subject matter of the contract. If he had assumed to do so, his contract could have been disaffirmed by the Government. City of Findlay v. Pertz, 66 Fed., 427.
It is not alone because of the inhibitions of said statutes, but because of principles governing courts aside from the statutes that he could not represent the Government in a contract with plaintiff. This court said in Michigan Steel Box Co. v. United States, 49 C. Cls., 421, 439:
“The reason of the rule inhibiting a party who occupies confidential and fiduciary relations toward another from assuming antagonistic positions to his principal in matters involving the subject matter of the trust is sometimes said to rest in a sound public policy, but it also is justified in a recognition of the authoritative declaration that no man can serve two masters; and considering that human nature must be dealt with the rule does not stop with actual violations of such trust relations, but includes within its purpose the removal of any temptation to violate them. Hence the prim cipal, on being informed of the participation of his agent on his own account and interest in a transaction wherein there was an obligation to represent the principal, may disaffirm the contract so entered into without reference to any actual damage to the principal or benefit to the agent.”
The Public Printer refused to make a contract with plaintiff, and it is probable that he recognized that to do so would *273 place him in a position he was unwilling to occupy. His incompetency to make an express contract is equally fatal to any theory of an implied contract. “For it is fundamental that he who is without authority to bind his principal by an express contract can not be held to have done so by implication.” Beach v. United States, 226 U. S., 243, 260.
Our conclusion is that plaintiff’s petition should be dismissed, and it is ordered.
Booth, Judge, Barnet, Judge, and Atkinson, Judge, concur.